**Loyd E. BEATY, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–730.

United States Court of Veterans Appeals.

June 23, 1994.

As Amended July 12, 1994.

Lena N. Swanson, Bremerton, WA, was on the pleadings, for appellant.

Robert E. Coy, Acting Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Jaqueline M. Sims, Washington, DC, were on the pleadings, for appellee.

Before KRAMER, FARLEY, and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, World War II veteran Loyd E. Beaty, appeals a February 10, 1992, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to a total disability rating based upon individual unemployability (TDIU). R. at 3–9. The appellant has filed a brief urging reversal or, in the alternative, remand for readjudication. The Secretary has moved for remand in order for the BVA to readjudicate the claim in a decision supported by adequate reasons or bases. Also pending before the Court is the appellant's motion for oral argument. For the reason set forth below, the Court will reverse the BVA's decision and remand the matter to the Board for proceedings consistent with this opinion.

### I. Background

The veteran served in the U.S. Army from November 1941 to January 1945. R. at 12. In February 1944, he sustained a gunshot wound in his left eye while disarming a weapon in the line of duty. R. at 12, 13, 32. In September 1944, a military examiner stated a final diagnosis: "Eyeball, enucleation of[ ] [left eye] ... [as a] result of penetrating injury sustained when [the veteran] was disarming [a] 20 mm. shell[ ] while on duty with 815th Engineers." R. at 13. (Enucleate means to remove. WEBSTER'S MEDICAL DESK DICTIONARY 214 (1986) [hereinafter

WEBSTER'S].) In November 1944, a service medical entry stated: "Incapacitated for military service because of loss of left eye in combat. Injury has resulted in episodes of headaches, inability to judge distance clearly and loss of depth perception." R. at 19. In January 1945, the Army granted the veteran a Certificate of Disability for Discharge as a result of his left-eye injury. R. at 18.

As of February 1950, the veteran was service connected for the following disabilities: (1) "enucleation, left eye, residuals of GSW [gunshot wound]", rated 40% disabling; (2) "GSW group XV, mesial thigh group, left, mod[erately] severe", rated 20% disabling; (3) "GSW group IX, intrinsic muscles of left hand, with retained foreign bodies", rated 10% disabling; (4) "minute multiple metallic foreign bodies, left maxillary antrum and maxilla", rated 10% disabling; (5) "conjunctivitis, r[igh]t, active with retained foreign body in r[igh]t cornea, vision normal", rated 10% disabling; and (6) "multiple minute scars, left chest and r[igh]t leg, asymptomatic; hemorrhoids, external, mild", rated 0% disabling. R. at 34. His total combined rating was 70%, effective July 1947. *Ibid.*

In May 1989, he filed with a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) an application for increased compensation based on unemployability due to problems with his eyes; he listed farming as his full-time occupation. R. at 37. The veteran indicated that he had attained an 8th grade level education. R. at 38. In support of his claim, he submitted an April 1989 letter from Dr. Bruce Purdy, a private physician, who had stated:

> [The veteran] has a prosthetic left eye as a result of injury sustained in combat during World War II. He has had severe difficulty in the last few years with chronic irritation as a consequence [of] dust. His experience is related to driving farm equipment. When driving combines and tractors, the dust is severe. He has been advised to retire because of this disability.

R. at 36.

In a July 1989 VA report of medical examination for disability evaluation, the veteran complained of "c[h]ronic [i]rritation of false[-]eye socket due to dust [and] sand

from ... farming equipment [and] irritatio[n] of right eye [w]ith shrapne[l] scars". R. at 40. A July 1989 VA RADIOLOGIC CONSULTATION REQUEST/REPORT concluded that the veteran had experienced, inter alia: "Marked osteoarthritic degenerative changes of the joints of the [left] hand and fingers". R. at 44. In a consultation report apparently dated July 1989, a VA physician stated that the veteran's left eye "has had considerable irr[i]tat[ion] from dust". R. at 46. In an August 1989 compensation and pension examination report, a VA physician diagnosed him as having, inter alia, "chronic conjunctivitis of the left orbit prosthetic eye[;] recurrent conjunctivitis of the right eye, residual of shrapnel injury causing also iritis" and "gunshot wound residual left hand [dominant hand], shrapnel injury with decreased grip". R. at 49. (Iritis is an inflammation of the iris of the eye. WEBSTER'S, at 352).

In September 1989, the VARO issued a confirmed rating decision, concluding: "The evidence does not est[ablish] that the vet[eran] is unemployable by virtue of his s[ervice-]c[onnected] conditions nor did they cause his unemployability." R. at 51. In May 1990, the veteran filed a Notice of Disagreement. R. at 54. In support of his claim, he submitted a March 1990 letter from a prospective employer, owner of an auto service center, who had stated: "After reviewing your job application, [w]e find that we cannot hire workers with your vision problems and other dis[a]bilities as we cannot get insurance covering employees with those kind of handicaps." R. at 55. The veteran also submitted a February 1990 letter from an owner and manager of a paint and body repair shop, who had stated: "In regard[ ] to your job application, we are not hiring [i]nexperienced personnel at this time as we do not have an on-the-job training program." R. at 56. In May 1990, the RO issued a confirmed rating decision. R. at 57.

In his June 1990 appeal to the BVA, the veteran stated:

> I think I am due ... 100% unemployment ... due to wounds I received [i]n W[orld] W[ar] II[.] I have been forced to quit the only occupation I know how to do [and] I am skilled at ... due to irritation [and]

[i]nfection to both my blown[-]out eye ... and my scarred[,] good eye[.] [M]y doctor has treated me for those conditions for an average of three times a year since 1980 and advised me each year to seek a more sanitary work environment [other] than [f]arming.... In [April] 1989[,] ... I had to quit [f]arming due to infected eyes ... [and] seek other employment[.] I app[li]ed to 10 different firms [i]n person from [A]pril 1989 to June 1990[.] [N]o one has hired me yet. [The] [p]rimary reason for not hiring me[,] [according to prospective employers, was that] I would be a hazard to myself as well as a hazard to other employees due to my type of disability.

R. at 63.

In August 1990, at an RO hearing on appeal to the BVA, the veteran testified under oath, in pertinent part:

I worked 600 acres [at] one time[ ] by myself but it got so difficult that I'd get these irritations in my eye—sometimes infections. I would have to lay on the couch for two days with ice packs, heat packs [until] ... I could go back ... and work[ ].... [I k]ept ... trying to make a go of it [until] ... my doctor ... said[:] ["W]hy don't ... you [get] a job [with a] little more [of a] sanitary environment[?] You don't want to spend the rest of your life blind, do you[?"] ... I told him this was the only occupation I know and [after] ... 30 [to] 40 years[ ] I don't know any other occupation. This is my life.

. . . .

.... [When I farm my left] eye gets infected ... [I] can't see [any]thing ... in front of [me]. I can kind of see to the side and then I [get] a severe headache...., [a] throbbing ... that feel[s] like a ... sledgehammer. [I] can feel [my] heart beating behind the [left] eye.

. . . .

I wear the best goggles. I [have] three pair ... or two pair on my combine. I have tried ever[y] kind.... [I] also wear a handkerchief ... [o]ver the left eye and I even had my wife make me a bonnet....

.... [Combine dust, chemical dust, and dust from the cotton harvesters] would get through ... [the] little holes in my goggles.... [T]hat artificial eye would just be caked over with the stuff.

R. at 66, 69, 71, 72. He also testified that he had not experienced any other problems that were not related to his service which had caused him any "trouble with farming". R. at 77. In September 1990, an RO hearing officer confirmed denial of entitlement to TDIU, stating: "[S]ervice-connected disabilities are shown to be static in nature and there is no evidence of increased disability. [The] [v]eteran's present unemployability status is not shown to be solely due to service-connected disabilities." R. at 81.

In a January 1991 letter to VA, the veteran stated that in addition to his service-connected eye disabilities "[t]he stiffness and soreness is getting worse in my [service-connected] left thigh, to where I am not able to squat or bend or do any farming[ ] or any kind of physical labor that requires squatting and bending, such as mechanic['s] work". R. at 93. He also stated that because of his service-connected left-hand disability he had been unable "to grip equipment or tools" and that "[a]ll of my service[-]connected disabilities are becoming worse". *Ibid.* In March 1991, a private optometrist examined the veteran's eyes and concluded:

The right eye [the functioning eye] showed a multitude of problems associated with chronic allergy to dust, farm chemicals, and pollen. They can be listed as chronic allergic conjunctivitis, exposure keratitis, and blepharitis. The internal eye exam revealed early cataract and several vitreous floaters.

The artificial eye (left) is absolutely worn out and needs a new fitting. The palpebral conjunctiva on the left eye suffers from the same conditions as the right eye.

Lubrication of the right eye ... at night will help keep the eye more comfortable, but reducing the exposure needs to be part of your plans for the future.

R. at 98. (Blepharitis is an inflammation of the eyelids. Keratitis is an inflammation of the cornea of the eye caused by infectious or noninfectious agents. WEBSTER'S, at 80, 363.)

In February 1992, the BVA denied entitlement to a TDIU rating, concluding: "The veteran's service-connected disabilities are not of such severity as to render him unable to obtain and retain substantially gainful employment in light of his education and work experience." R. at 5. The Board specifically found that "with eye protection, these occupations ["farmwork or heavy equipment operation"] would still be feasible" and that "light and sedentary work exists which he would be capable of performing". R. at 7. As to the latter finding, the Board cited to and quoted from Social Security Administration (SSA) criteria for determining suitability for sedentary work. *Ibid.* A timely appeal to this Court followed.

## II. Analysis

■ The Court reviews BVA factfinding under a "clearly erroneous" standard; "if there is a 'plausible' basis in the record for the factual determinations of the BVA, ... we cannot overturn them". *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990); 38 U.S.C. § 7261(a)(4). The Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Simon v. Derwinski,* 2 Vet.App. 621, 622 (1992); *Masors v. Derwinski,* 2 Vet.App. 181, 188 (1992); *Gilbert,* 1 Vet.App. at 57.

■ Pursuant to 38 C.F.R. § 20.202 (1993), the Board is required to construe arguments raised in a substantive appeal in a liberal manner to determine whether they raise issues on appeal. *See EF v. Derwinski,* 1 Vet.App. 324, 326 (1991) ("VA's statutory 'duty to assist' must extend liberal reading to include issues raised in all documents or oral testimony submitted prior to the BVA decision"); *Myers v. Derwinski,* 1 Vet.App. 127, 129–30 (1991) ("upon receipt of a VA Form 1–9, the BVA must review all issues which are reasonably raised from a liberal reading of the appellant's substantive appeal"). The Court has repeatedly held that the Board is required to consider a well-grounded claim for VA benefits under all applicable provisions of law and regulation whether or not the claimant specifically raises the applicable provision. *See Suttmann v. Brown,* 5 Vet. App. 127, 132 (1993); *Fanning v. Brown,* 4 Vet.App. 225, 229 (1993); *Douglas v. Derwinski,* 2 Vet.App. 435, 440 (1992) (en banc); *Douglas v. Derwinski,* 2 Vet.App. 103, 109 (1992); *Schafrath v. Derwinski,* 1 Vet.App. 589, 592–93 (1991); *Akles v. Derwinski,* 1 Vet.App. 118, 121 (1991); *Payne v. Derwinski,* 1 Vet.App. 85, 87 (1990).

### A. TDIU Rating

■ For the reasons set forth below, the Court holds that the Board's findings as to a TDIU rating in this case do not have a plausible basis in the record and, therefore, will be reversed as being clearly erroneous. VA regulations provide:

> Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is ... unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities: *Provided* That ... if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more.... ***Marginal employment shall not be considered substantially gainful employment.*** For purposes of this section, marginal employment generally shall be deemed to exist when a veteran's earned income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Marginal employment may also be held to exist, on a facts[-]found basis (includes but is not limited to employment in a protected environment such as a family business or sheltered workshop), when earned annual income exceeds the poverty threshold.

38 C.F.R. § 4.16(a) (1993) (emphasis added). Here, the veteran's service-connected left-eye disability is rated 40% disabling and his combined service-connected disability rating is 70%. R. at 34. Hence, he meets the § 4.16(a) threshold rating requirements.

Pursuant to 38 C.F.R. § 3.340(a) (1993), "[t]otal disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation." "[I]f the total rating is based on a disability or combination of disabilities ... of less than 100 percent [rating], it must be determined that the service-connected disabilities are sufficient to produce unemployability without regard to advancing age." 38 C.F.R. § 3.341(a) (1993); see also 38 U.S.C. § 1502.

1. *Reasons or Bases:* The Board failed to address the following evidence of record which clearly supported the TDIU claim: (1) Dr. Purdy's April 1989 statement that he had advised the veteran to "retire" because of the chronic eye irritation from dust (R. at 36); (2) a July 1989 VA compensation and pension examination report showing that the veteran had been diagnosed as having, inter alia, "chronic conjunctivitis of the left orbit prosthetic eye[;] recurrent conjunctivitis of the right eye, residual of shrapnel injury causing also iritis" and "gunshot wound[,] residual left hand, shrapnel injury with decreased grip" (R. at 49); (3) a private optometrist's statement indicating that because of a "multitude of problems associated with chronic allergy to dust, farm chemicals, and pollen", including "chronic allergic conjunctivitis", the veteran needed to reduce the amount of exposure to these elements (R. at 98); (4) the veteran's sworn, undisputed testimony indicating that although he had worn the "best goggles" to protect his eyes he could no longer be a farmer because of his eye disabilities (R. at 69, 71); and (5) a March 1990 letter from a prospective employer stating that the veteran had been denied unemployment because of his disabilities (R. at 55). However, a remand for the Board to consider this evidence and provide reasons or bases for its assessment of it is not in order here because of our following holdings as to the presence of clear error in the Board's decision.

2. *Clear Error:* First, the Court holds that the Board's finding that "with eye protection, these occupations ["farmwork or heavy equipment operation"] would still be feasible" (R. at 7) has no evidentiary basis in the record and is, therefore, clearly erroneous. *See* 38 U.S.C. § 7261(a)(4). As noted above, the Board ignored the veteran's sworn and undisputed testimony that he had worn the "best goggles" while farming. R. at 69, 71. It is the Board's task to make findings based on evidence of record—not to supply missing facts. Where the veteran submits a well-grounded claim for a TDIU rating, as he has done here, the BVA may not reject that claim without producing evidence, as distinguished from mere conjecture, that the veteran can perform work that would produce sufficient income to be other than marginal. *See* 38 C.F.R. § 4.16(a); *Moore (Robert) v. Derwinski,* 1 Vet.App. .356, 358 (1991) (discussed below); *Ferraro v. Derwinski,* 1 Vet. App. 326, 331–332 (1991); *cf. Colvin v. Derwinski,* 1 Vet.App. 171, 175 (1991) (Board may not rely on its own unsubstantiated medical opinions).

Next, the Board's denial of TDIU appeared to rely substantially on the February 1990 rejection letter from a prospective employer, the owner of a paint and body shop. The Board stated: "We find it significant that, although he was turned down for employment ..., he was turned down due to lack of experience and not because the prospective employer thought his disabilities would preclude him from performing the type of work required." R. at 7. However, the BVA failed to consider in this regard both the July 1989 VA compensation and pension examination report showing, inter alia, that the veteran had limited use of his dominant hand due to "decreased grip" as a residual disability of his service-connected gunshot wound (R. at 49) and his statement that he "cannot grip ... a tool such as a hammer or a pair of pliers" (R. at 93). *See* 38 U.S.C. § 7104(a), (d)(1). Again, the evidence of record does not provide a plausible basis for the Board's finding (as to this piece of evidence) and it is, therefore, clearly erroneous. *See* 38 U.S.C. § 7261(a)(4).

Further, the Court holds that the Board's finding that "light and sedentary work exists which he is capable of performing" (R. at 7) has no evidentiary basis in the record and is, therefore, clearly erroneous.

*See* 38 U.S.C. § 7261(a)(4). First, the Board's reliance on Social Security regulations as to sedentary occupations is misplaced. There is no statutory or regulatory authority for the determinative application of SSA regulations to the adjudication of VA claims. Hence, the BVA may not in certain cases choose to apply SSA regulations that have never been adopted by the Secretary as applicable to VA claims adjudication. *See* 38 C.F.R. §§ 1.12, 1.551 (§ 1.551(c) provides that a person may not be "adversely affected by any matter required by this section to be published" in the Federal Register that was not so published unless the person has "actual and timely notice" of its terms); *Fugere v. Derwinski,* 1 Vet.App. 103, 107 (1990) (notice and public comment required for substantive rules governing VA claims adjudication). Second, and closely related, VA has not adopted certain SSA regulations that would generally be beneficial to a claimant. *See Collier v. Derwinski,* 1 Vet.App. 413, 417 (1991); *see also Masors,* 2 Vet.App. at 187–88. The BVA has no authority to pick and choose from among SSA criteria which have never been made generally applicable to VA TDIU claims by regulations appropriately adopted by the Secretary. *See Fugere, supra; cf. Bailey v. Derwinski,* 1 Vet.App. 441, 448 (1991) (holding internally inconsistent BVA factfinding was reached in "arbitrary and capricious" manner in violation of 38 U.S.C. § 7261(a)(3)(A)). Here, the Board's reliance on SSA provisions (provisions not adopted by VA) concerning sedentary forms of work does not provide a plausible basis for the Board's denial of a TDIU rating. R. at 7; *see* 38 U.S.C. § 7104(c).

■ Moreover, "[s]ubstantially gainful employment is 'that which is ordinarily followed by the nondisabled to earn their livelihood with earnings common to the particular occupation in the community where the veteran resides.'" *Moore, supra* (quoting VA ADJUDICATION PROCEDURE MANUAL M21–1 [hereinafter "Manual"], pt. VI, para. 50.55(8) [now para. 7.55b(7) ] ). This Court has determined that substantially gainful employment suggests "a living wage". *Ferraro,* 1 Vet. App. at 332; *see also Moore, supra;* 38 C.F.R. § 4.16(a). In the present case, the Board, although briefly mentioning substan-

tially gainful employment, failed to apply this Manual provision, which, as a substantive rule, must be followed and uniformly applied by VA in its claims adjudication process. *See Fugere, supra; see also Doran v. Brown,* 6 Vet.App. 283, 289 (1994); *Zarycki v. Brown,* 6 Vet.App. 91, 97 (1993).

Here, the record showed that the veteran had an eighth-grade education, that he had been a farmer for the past thirty to forty years and that was the "only occupation" he knew, that he had been unemployed since 1989, and that he had made repeated, unsuccessful efforts to obtain non-farming employment. R. at 63, 66, 84, 96. The medical evidence showed that the veteran had been advised to "retire" because of his service-connected disabilities. R. at 36, 98. Yet the Board implicitly reached a medical conclusion that he was able to perform "sedentary work" (R. at 7), a finding which the Court also holds had no plausible basis in the record. *See* 38 U.S.C. § 7261(a)(4); *Harder v. Brown,* 5 Vet.App. 183, 189 (1993). There is no evidence of record to show that the veteran could *"realistically* [,] within [his] physical and mental capabilities", pursue the type of employment that would enable him to earn a living wage. *Moore,* 1 Vet.App. at 359 (citing *Timmerman v. Weinberger,* 510 F.2d 439, 442 (8th Cir.1975)); Manual, pt. VI, para. 7.55b(7). Moreover, there is no evidence of record to support the Board's implicit conclusion that any job that the veteran might be capable of obtaining and retaining would provide more than "marginal employment" as defined in 38 C.F.R. § 4.16(a).

■ **3.** ***Reversal:*** Consequently, not only did the Board fail to provide adequate reasons or bases for its basic conclusion (*see* 38 U.S.C. § 7104(d)(1)), as the Secretary has conceded, and to base its decision "on the entire record" (38 U.S.C. § 7104(a)), and not only does the record fail to provide a plausible basis for a denial of TDIU, but all the evidence supported the veteran's claim for a TDIU rating. *See* 38 C.F.R. §§ 3.340, 3.341, 4.16. There was no evidence to the contrary. *See Traut v. Brown,* 6 Vet.App. 495, 498–99 (1994); *Harder, supra* (Court reversed where Board gave VA physician's diagnoses

"lesser weight in the face of no contrary evidence"); *Hanson v. Derwinski,* 1 Vet.App. 512, 516 (1991) (Court reversed and held that there "is nothing of probative value in the record" to refute medical evidence showing that Tourette's disease was incurred in service); *Meister v. Derwinski,* 1 Vet.App. 472, 473 (1991) (Court reversed where two medical opinions supported secondary service connection and there was "no competent medical authority" to the contrary).

██ Although in our prior cases reversing for a TDIU rating there has generally been an unequivocal professional opinion of record that the veteran was unemployable, *see, e.g., Brown (Mitchell) v. Brown,* 4 Vet. App. 307, 308 (1993); *Moore,* 1 Vet.App. at 357–58, we have never established that such an opinion is an evidentiary prerequisite to a holding of clear error as to a TDIU rating. Reversals without such an opinion should be rare, but, on the particular facts in this record, we are left with the "definite and firm conviction that a mistake has been committed". *Gilbert,* 1 Vet.App. at 52 (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). We are further convinced that there are not "two permissible views of the evidence" in this regard. *Ibid.* (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). Moreover, we believe that Dr. Purdy's April 1989 advice to the veteran "to retire because of [his] disability" (R. at 36) may fairly be read, in light of the facts here, as a finding of unemployability.

In light of the uncontradicted facts of record in this case showing that the veteran is unable to obtain substantially gainful employment due to his service-connected disabilities and given the fact that nothing in the record supports the Board's medical conclusion that the veteran had been able to perform certain forms of "sedentary work", let alone non-marginal work, the Court holds that the Board's finding that "[t]he veteran's service-connected disabilities are not of such severity as to render him unable to obtain and retain substantially gainful employment in light of his education and work experience" (R. at 5) was without a plausible basis in the record and, therefore, clearly erroneous. *See Traut, supra; Harder,* 5 Vet.App. at 189; *Hanson,* 1 Vet.App. at 517; *Gilbert,* 1 Vet.App. at 53. Accordingly, the Court holds that the veteran is entitled to a TDIU rating.

### B. Implied Rating–Increase Claim

The Court notes that in his substantive appeal (VA Form 1–9) the veteran had raised the issue of entitlement to an increased rating for his service-connected disabilities by stating, inter alia: "I have been forced to quit the only occupation I know how to do [and] I am skilled at ... due to irritation [and] [i]nfection to both my blown[-]out eye ... and my scarred[,] good eye". R. at 63; *EF, supra.* He also claimed that the stiffness and soreness in his service-connected left thigh was getting worse and that his service-connected left-hand disability had increased. R. at 93. On remand, the Board will therefore be required to adjudicate the veteran's reasonably raised rating-increase claims. *See Kellar v. Brown,* 6 Vet.App. 157, 162 (1994) (Court held that appellant's extraschedular consideration claim was independent of his TDIU claim).

### III. Conclusion

Upon consideration of the record and the pleadings of the parties, the Court reverses the February 10, 1992, BVA decision as clearly erroneous and remands to the BVA with directions to assign a TDIU rating, with an effective date established in accordance with applicable law and regulation, and for adjudication of appellant's reasonably raised claims for increased ratings for his service-connected disabilities—all in accordance with this opinion. The Court denies the appellant's motion for oral argument because oral argument would not materially assist in the disposition of this appeal.

REVERSED AND REMANDED.