Citation Nr: 1434254 
Decision Date: 07/31/14 Archive Date: 08/04/14

DOCKET NO. 10-04 318A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to service connection for a gastrointestinal (GI) disorder, to include gastroesophageal reflux disease (GERD), and as secondary to service-connected post-traumatic stress disorder (PTSD). 

2. Entitlement to a total disability rating for service-connected disabilities due to individual unemployability (TDIU). 


REPRESENTATION

Appellant represented by: John S. Berry, Attorney


ATTORNEY FOR THE BOARD

R. Tyson, Associate Counsel



INTRODUCTION

The Veteran had active duty service from July 1967 to February 1970. 

This matter comes before the Board of Veterans' Appeals (Board) from May 2009 and February 2010 rating decisions from the above Department of Veterans Affairs (VA) Regional Office (RO). The May 2009 rating decision denied service connection for a GI disorder and the February 2010 rating decision denied an increased rating claim in excess of 30 percent for PTSD from which the TDIU claim was inferred. Upon appeal to the Board, the Board in a February 2012 decision denied an initial rating higher than 30 percent prior to April 8, 2010 for PTSD, but granted a higher 70 percent rating as of April 8, 2010. The GI issue was remanded for additional development to obtain any outstanding medical evidence related to this claimed disability as well as the scheduling of a VA examination to determine whether the claimed GI disability is related to military service. The examination was completed in October 2012. Additional medical records from private treating physicians were obtained and associated with the record. Accordingly, the Board finds the RO substantial complained with its remand directives. Stegall v. West, 11 Vet. App. 268 (1998).

The Veteran appealed the Board's February 2012 decision to the United States Court of Appeals for Veterans Claims (Court) for the period prior to April 8, 2010. In July 2012, the Court granted the parties a Joint Motion of Partial Remand (JM) vacating the portion of the Board's decision that denied a rating in excess of 30 percent prior to April 8, 2010 for PTSD and remanded the case to the Board to readjudicate the claim. Prior to the claim returning to the Board, the Veteran was sent a letter asking the Veteran if he had additional evidence to submit. In a March 2013 letter from the Veteran's attorney representative, the attorney presented additional argument, but did not submit any additional evidence or make the Board aware of any outstanding evidence. The Board issued a decision in April 2013 finding the Veteran entitled to a 70 percent rating for PTSD prior to April 8, 2010. The Board remanded the TDIU for further development to include issuing proper notice to the Veteran regarding his TDIU claim and to have the veteran submit a VA-Form 21-8940 (Veteran's application for increased compensation based on unemployability). The RO complied with the Board's remand directives in August 2013 by sending the Veteran notice with the VA Form 21-8940. However, the Veteran did not return the form. Subsequently, the RO denied the TDIU claim in a May 2014 Decision Review Officer Decision, and returned the case to the Board for readjudication. 


FINDINGS OF FACT

1. The evidence of record does not show that the Veteran has a gastrointestinal disability, to include GERD, that is etiologically related to active duty service or service-connected PTSD. 

2. The evidence of record demonstrates that the Veteran is unable to secure and follow substantially gainful occupation by reason of his service-connected disabilities, specifically his PTSD. 


CONCLUSIONS OF LAW

1. The criteria for service connection for a GI disorder, to include GERD have not been met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.310.

2. The criteria for the assignment of a TDIU is met. 38 U.S.C.A. § 1155, 5102, 5103, 5103A, 5107 (West 2002 and Supp. 2013); 38 C.F.R. §§ 3.159, 3.321, 3.340, 3.341, 4.16, 4.19 (2013).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VA's Duties to Notify and Assist

With regard to the Veteran's claim decided herein, VA has met all statutory and regulatory notice and duty to assist provisions pursuant to the Veterans Claims Assistance Act of 2000 (VCAA). 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326.

Under the VCAA, when VA receives a complete or substantially complete application for benefits, it is required to notify the claimant and his representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim prior to the initial adjudication of the Veteran's claim. 38 U.S.C.A. 
§ 5103(a); 38 C.F.R. § 3.159(b); Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004), Quartuccio v. Principi, 16 Vet. App. 183 (2002). VA sent the Veteran notices in January 2009 for the Veteran's service connection claim and in August 2013 for his TDIU claim, which satisfied the notice requirement. The notices also informed the Veteran of how VA determines the appropriate disability rating or effective date to be assigned when a claim is granted, consistent with the holding in Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

Regarding VA's duty to assist, VA obtained the Veteran's service treatment records, service personnel records, and post-service VA and private treatment records. Additionally, the Veteran was provided examinations in April 2010 regarding his PTSD, and in October 2012 and May 2013 regarding his GI issues, which VA has used to evaluate his claims. The Board acknowledges the Veteran's representative's assertions that the examinations are inadequate. However, as will be explained fully in the merits section of this decision, the medical evidence as developed is adequate. Indeed, after an initial examination in October 2012 was inconclusive, subsequently more tests and studies were performed, including an esophagogastroduodenoscopy (EGD), for the purpose of formulating and educated medical opinion. After the completion of the requested tests, the examiner made an addendum opinion in May 2013 based on the results of these tests and the claims file as a whole. The Board finds the examinations conducted by the GI examiner as well as the other examiners were adequate for rating purposes because they are based upon a review of the claims file and objective medical tests. 

In regard to the TDIU claim, the Board herein grants the benefit sought, so any VCAA deficiencies are rendered harmless errors. Although VA provided the Veteran with proper VCAA notice and VA Form 21-8940, the Veteran has yet to return this form to VA. As such, VA must rely on the record to determine the Veteran's employment history and/or schooling and other training. 

II. Legal Criteria: Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. 
§ 1110; 38 C.F.R. § 3.303(a). Generally, for a veteran to establish service connection, the record must demonstrate (1) the existence of a current disability; 
(2) the existence of the disease or injury in service; and (3) a relationship (or nexus) between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004). 

In addition to direct service connection, a Veteran may prevail under an alternative theory of service connection on a secondary basis. Service connection on a secondary basis may be granted for a disability which is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Accordingly, any increase in severity of a non-service-connected disease or injury that is proximately due to or the result of a service-connected disease or injury, and not due to the natural progress of the non-service-connected disability, will be service connected. 38 C.F.R. § 3.310(b).

In the adjudication of the veteran's claim, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded the claimant.

Unfortunately, the preponderance of the evidence weighs against this service connection claim. 

GI Disability

The Veteran asserts that he suffers from a GI disability that is related to active duty service or service-connected PTSD. The Veteran has a history of a gastrointestinal esophageal reflux disease (GERD) diagnosis, as noted in the Veteran's VA and private treatment records going back to 2004. He has been prescribed Prevacid to manage the symptoms. The Veteran also claimed his GI disability included irritable bowel syndrome and hiatal hernia. However, the record does not demonstrate the presence of either chronic condition currently. The hiatal hernia appears to have been an acute condition. He underwent surgery in 2009 to repair an umbilical hernia. When evaluated in November 2012, an EGD revealed no significant hiatal hernia, or other pathology. Also, in reviewing the Veteran's treatment records, there is no diagnosis for irritable bowel syndrome in any of the Veteran's treatment records. A November 2012 esophagogastroduodenoscopy report indicated the study was normal; the report commented that the Veteran "has ongoing symptoms compatible with esophageal reflux but does not have evidence of esophagitis or Barrett's esophagus. He will continue with an anti-reflux regimen and avoidance of gastric irritants." In a December 2012 evaluation, the Veteran's bowels were considered "normal." 

The Board now examines the Veteran's service-treatment records. The only GI related issue raised in the Veteran's service treatment records was a sick call visit for stomach cramps and weakness in July 1968. During that visit, he was prescribed a number of medications for stomach irritation. Throughout the remainder of the Veteran's service, he received no other follow-up treatment and at his February 1970 separation examination, neither the examiner nor the Veteran noted any GI issues. The lack of complaints and/or treatment on the part of the Veteran for any additional stomach issues indicates that the issue in service was acute and transitory condition rather than chronic. 

The next complaints of GI issues would not occur more than 30 years post-service as seen in the post-service treatment records. The Board may weigh the absence of contemporaneous medical evidence against the lay evidence in determining credibility, but the Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence. See Buchanan v. Nicholson, 451 F.3d 1331, 1335 (Fed. Cir. 2006); but see Maxson v. Gober, 230 F.3d 1330 (Fed. Cir. 2000) (evidence of a prolonged period without medical complaint after service can be considered along with other factors in the analysis of a service connection claim). The significant length of time between his stomach pain and complaints of GERD symptoms to physicians is a factor that weighs against his claim. 

Further weighing against the Veteran's claim is the negative medical opinion provided by a VA GI examiner in May 2013. This examiner initially examined the Veteran in October 2012, but did not make an opinion at that time because he was not privy to the claims folder and was waiting for the results of an EGD, which he deemed necessary to make the opinion. In May 2013, the examiner opined as follows: 

 . . . this Veteran has no evidence of any abnormality in the esophagus. There is no pathology noted in the foregut . . . It is my medical opinion that this man is unlikely has any current gastrointestinal disorder related to his military service. His endoscopy was normal based on direct visualization which means that it is unlikely that this man has a service-connected gastrointestinal disorder or that he has a gastrointestinal disorder secondary to his already service-connected PTSD, meaning proximately due to, the result of, or aggravated by this service-connected PTSD. 

In further specific regard to secondary service connection aspect of this claim, there is no evidence of record from any physician that denotes GI issues related to his PTSD. Even in reviewing earlier psychiatric treatment records from 2006, the Veteran did not mention GI issues at any point during the initial psychiatric evaluation, which is a further indication of a lack of nexus, or during any examination since that initial evaluation. Additionally, based on the May 2013 GI examination, the Veteran's GI issues have become better over time even though his PTSD symptoms have become worse, which provides additional support against secondary service connection. 

For all the reasons set forth above, the Board finds that the preponderance of the evidence is against the claim for service connection for gastrointestinal disorder. In so finding, the Board acknowledges the Veteran's assertion that he has a gastrointestinal disability - specifically GERD - that is related to service. While it is conceded that the Veteran has been prescribed medication for GERD, in point of fact the November 2012 procedure to assess the Veteran's complaints found no evidence of any underlying pathology. The claimed existence of symptoms, as may be reported by a claimant, does not mean a disability within the context of VA law and regulations exist for which compensation may be granted. Congress has specifically limited entitlement to service-connected benefits to cases where there is a current disability. In the absence of proof of a present disability, there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223 (1992). While the Veteran is competent to relate symptoms of epigastric distress, such as feeling gas, heartburn, etc., such symptoms do not necessarily indicate the presence of GERD or other chronic gastrointestinal disorder. Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), the Veteran's opinion that his GI symptoms amount to a disability for which service connection may be granted (i.e. GERD), is outweighed by the probative medical evidence to the contrary. The medical evidence, which was specifically developed to investigate the Veteran's complaints, reveals no pathology indicative of a compensable gastrointestinal disorder. The Board finds this medical evidence to be of higher probative value than the Veteran's assertions that his symptoms amount to a chronic disability for which service-connection may be granted. 

In view of the VA examiner's need to obtain further tests to formulate an opinion in this case, the Board finds that the etiology of the Veteran's claimed GI disability falls outside the realm of common knowledge of a lay person and requires medical knowledge. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). The Board notes "[t]he duty to assist is not always a one-way street." Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). In this case, the Veteran has not pointed the Board to any medical evidence that contradicts the probative medical evidence already of record. Rather, VA's "duty" is just what it states, a duty to assist, not a duty to prove a claim with the claimant only in a passive role. Id. at 190, 193. Accordingly, the Board finds the VA has met its duty to assist the Veteran in development of his claims. 

III. TDIU

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities (Rating Schedule), which is based on the average impairment of earning capacity. 38 U.S.C.A. § 1155. Total disability is considered to exist when there is any impairment which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. Total disability may or may not be permanent. 38 C.F.R. § 3.340(a)(1). Total ratings are authorized for any disability or combination of disabilities for which the Rating Schedule prescribes a 100 percent evaluation. 38 C.F.R. § 3.340(a)(2).

A TDIU may be assigned when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. The inability to secure a substantially gainful occupation is determined in a two-part analysis. 

Generally, the Veteran must first meet a schedular requirement. If the veteran has only one service-connected disability, it must be rated at 60 percent or more; if he has two or more service-connected disabilities, at least one disability must be rated at 40 percent or more, with sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a).

For the above purpose of one 60 percent disability, or one 40 percent disability in combination, the following will be considered as one disability: (1) disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable, (2) disabilities resulting from common etiology or a single accident, (3) disabilities affecting a single body system (orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric), (4) multiple injuries incurred in action, or (5) multiple disabilities incurred as a prisoner of war. 
38 C.F.R. § 4.16(a). 

The determination of a referral or a grant, if the schedular requirement is met, is dependent on the second part of the analysis - "whether the veteran's service connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). In analyzing the severity of these disabilities, VA may consider a veteran's level of education, special training, and previous work experience, but may not consider a veteran's advancing age and nonservice-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19; Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). 

Substantially gainful employment is defined as work that is more than marginal, which permits the individual to earn a "living wage." See Moore v. Derwinski, 1 Vet. App. 356 (1991). Marginal employment is defined as an amount of earned annual income that does not exceed the poverty threshold determined by the Census Bureau. 38 C.F.R. § 4.16(a). Marginal work is not considered substantially gainful employment. 

In reaching a decision, it is necessary that the record reflect some factor which takes the case outside the norm with respect to a similar level of disability under the rating schedule. 38 C.F.R. §§ 4.1, 4.15; Van Hoose, 4 Vet. App. 361. The fact that a claimant is unemployed or has difficulty obtaining employment is not enough. The question is whether or not the Veteran is capable of performing the physical and mental acts required by employment, not whether he can find employment. See Beaty v. Brown, 6 Vet. App. 532, 538 (1994).

The Veteran meets the schedular requirement for a TDIU. The Veteran has three service-connected disabilities with a combined total of at least 70 percent. His service connected disabilities are rated as follows: PTSD at 70 percent; tinnitus at 10 percent, and noncompensable hearing loss, with a combined rating of 70 percent. 
With the Veteran meeting the schedular requirement, the Board proceeds with the merits of his TDIU claim. 

In a 2006 psychiatric report, the Veteran reported employment as a train master for a railroad company. He was in management for at least 16 years beginning in 1990. His job was to manage the newer railroad conductors and evaluate incidents where fatalities occurred on the railways. He had difficulty dealing with changes in management style combined with health issues, which resulted in his retirement in March 2008. 

The Veteran has a high school diploma. Additionally, he has completed coursework in an auto mechanic trade and towards a Bachelors' in Law Enforcement. Based on the record, it is unclear whether the Veteran completed either program. 

Based on his significant work history, including employment as a manager, and additional education, the Veteran would have the capacity to pursue a variety of employment opportunities. However, the examination of his education and past employment does not exist in a bubble, but viewed in the context of his service-connected disabilities, in making a final determination of TDIU.

In this regard, the Board notes that the Veteran's PTSD is rated at the 70 percent level. Under the General Rating Formula for Mental Disorders at 38 C.F.R. § 4.130, a 70 percent rating for PTSD is indicative of occupational and social impairments with deficiencies in most areas, such as work; and would manifest difficulty in adapting to stressful circumstances, including work or work-like setting. And the April 2010 VA psychiatric examination specified that the Veteran's signs and symptoms result in deficiencies in the following areas: judgment, thinking, family relations, work, mood, and school. In view of the fact that the Veteran's psychiatric symptoms are of the kind that cause significant occupational impairment, the Board finds that upon resolution of all reasonable doubt in the Veteran's favor, his is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, and entitlement to TDIU is warranted. 


ORDER

Service connection for a gastrointestinal disorder, to include as secondary to post-traumatic stress disorder (PTSD) is denied.

Entitlement to a total disability rating for service-connected disabilities due to individual unemployability (TDIU) is granted, subject to the regulations governing the payment of monetary awards. 



____________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs