﻿Citation Nr: AXXXXXXXX
Decision Date: 05/03/19 Archive Date: 05/03/19

DOCKET NO. 181220-1415
DATE: May 3, 2019

ORDER

Entitlement to service connection for a left knee arthritis with meniscus tear is granted.

The rating reduction for the service-connected right knee strain with limited extension from 40 percent disabling to zero percent, effective October 1, 2014, was proper, and, to this extent, the appeal is denied.

The rating reduction for the service-connected right knee strain with limited flexion from 20 percent disabling to 10 percent, effective October 1, 2014, was proper, and, to this extent, the appeal is denied.

Entitlement to a 40 percent rating for the right ankle disability prior to June 27, 2017, is granted.

Entitlement to a 40 percent rating for the right ankle from June 27, 2017, to March 12, 2018, is granted.

Effective April 1, 2016, entitlement to a total disability rating based upon individual unemployability due to service-connected disabilities (TDIU) is granted.

REMANDED

Entitlement to a temporary total evaluation for convalescence of the left knee disability following surgery is remanded.

Entitlement to a TDIU prior to April 1, 2016, is remanded.

FINDINGS OF FACT

1. Left knee arthritis with meniscus tear is proximately due to or the result of the service-connected right ankle and knee disabilities.

2. A November 2011 rating decision granted service connection for the right knee strain and assigned initial 40 and 20 percent ratings for limitation of extension and flexion, respectively. At the time of the reduction in June 2014, the Veteran’s right knee disability had shown improvement in ability to function under the ordinary conditions of life and work.

3. During the pendency of the appeal, the Veteran’s service-connected right ankle disability has manifested with ankylosis with inversion deformity.

4. From April 1, 2016, the Veteran’s service-connected disabilities alone have been of sufficient severity to produce unemployability, particularly in light of his education and employment experience.

CONCLUSIONS OF LAW

1. The criteria for service connection for left knee arthritis with meniscus tear as secondary to the service-connected right ankle and knee disabilities have been met. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.310 (2017).

2. The criteria for restoration of a 40 percent rating for the service-connected right knee strain with limitation of extension, effective October 1, 2014, have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 3.105, 3.159, 3.344, 4.1, 4.2, 4.3, 4.7, 4.75-.79 (2017).

3. The criteria for restoration of a 20 percent rating for the service-connected right knee strain with limitation of flexion, effective October 1, 2014, have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 3.105, 3.159, 3.344, 4.1, 4.2, 4.3, 4.7, 4.75-.79 (2017).

4. Prior to June 27, 2017, the criteria for a 40 percent rating for the service-connected right ankle disability have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, Diagnostic Code 5270.

5. From June 27, 2017, to March 12, 2018, the criteria for a 40 percent rating for the service-connected right ankle disability have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, Diagnostic Code 5270.

6. From April 1, 2016, the criteria for a TDIU rating have been met. 38 U.S.C. §§ 1155, 5107, 5110 (2012); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.16 (2017).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran elected to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran served on active duty in the United States Army from February 1976 to August 1980. 

The rating decision initially on appeal was issued in June 2014. On March 12, 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (codified at 38 C.F.R. § 19.2(d)). The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. In October 2018, the Agency of Original Jurisdiction (AOJ) issued a RAMP rating decision considering the evidence of record as of the date the RAMP election form was received by VA. In December 2018, the Veteran timely appealed the October 2018 RAMP rating decision to the Board, limiting the scope of his appeal to the issues listed on the title page, and requesting direct review of the evidence considered by the AOJ.

1. Entitlement to service connection for a left knee arthritis with meniscus tear is granted.

The Veteran contends that his current left knee disability is service-connected right ankle and knee disability, pointing out that service connection for his current right knee was granted as secondary to his service-connected right ankle disability.

During the pendency of the appeal, the Veteran’s left knee disability has been diagnoses as left knee arthritis with meniscus tear. See, e.g., Orthopedic Specialist (April 5, 2012).

The medical evidence pertaining to the etiology of the Veteran’s current left knee disability consists of opinions from the Veteran’s treating orthopedic specialist and a VA examiner.

In April 2012, the orthoepic specialist who has been treating the Veteran’s upper and lower extremity disabilities opined, in pertinent part, that the Veteran’s service-connected right ankle and knee disabilities caused increased weightbearing on the left knee, which “certainly” is likely to have caused premature degenerative changes of left knee. The specialist also explained that the Veteran’s right ankle disability is a contributing factor for the development of the Veteran’s current meniscus tear and arthritis of the left knee. The specialist explained that while working as a mechanic, the Veteran’s service-connected right knee and ankle disabilities caused him to place added stress on the left knee.

The Board ascribes heightened credibility to the orthopedic specialist’s opinion, not only because of the specialist’s expertise, but because the specialist is uniquely familiar with the interplay between the Veteran’s orthopedic conditions as the specialist had been treating the conditions.

In December 2012, a VA examiner opined that it is less likely as not that there is a causal relationship between the Veteran’s service-connected right knee disability and has current left knee meniscus injury as “there is no medical evidence to support a connection.”

The Board ascribes no probative value to the December 2012 VA examiner’s opinion. Critically, the examiner failed to address whether the Veteran’s right knee disability aggravates his left knee disability, whether the Veteran’s right ankle disability causes or aggravates his left knee disability, or the favorable opinion from the Veteran’s treating orthopedic specialist. Stefl v. Nicholson, 21 Vet.App. 120 (2007) (holding that an adequate medical opinion must consider all raised theories of entitlement, to include aggravation); Gabrielson v. Brown, 7 Vet. App. 36, 40 (1994) (holding that the Board may not simply adopt a medical examiner's opinion that fails to discuss favorable evidence of record).

Even though the December 2012 VA medical opinion of record is inadequate, the Board concludes that there is sufficient evidence to resolve reasonable doubt in the Veteran’s favor and therefore a remand is not necessary to obtain another medical opinion as the available evidence is sufficient for that purpose. 38 C.F.R. § 3.159(c)(4); cf. Mariano v. Principi, 17 Vet. App. 305, 312 (2003). In this regard, the Board finds that the evidence—namely, the favorable April 2012 opinion from the Veteran’s treating orthopedic specialist—establishes that it is at least as likely as not that the Veteran’s current left knee disability is proximately due to or the result of his service-connected right knee and ankle disabilities. Accordingly, service connection for a left knee arthritis with meniscus tear is warranted.

2. The rating reduction for the service-connected right knee strain with limited extension from 40 percent disabling to zero percent, effective October 1, 2014, was proper, and, to this extent, the appeal is denied.

3. The rating reduction for the service-connected right knee strain with limited flexion from 20 percent disabling to 10 percent, effective October 1, 2014, was proper, and, to this extent, the appeal is denied.

In this case, as the 40 and 20 percent ratings for the service-connected right knee disability based on limitation of extension and flexion, respectively, were in effect for less than 5 years; thus, the provisions of 38 C.F.R. § 3.344 (c) are applicable. 

Reduction is warranted where reexamination shows actual improvement in a veteran’s ability to function under the ordinary conditions of life and work. Faust v. West, 13 Vet. App. 342, 350 (2000); Brown v. Brown, 5 Vet.App. 413, 421 (1993); see also 38 C.F.R. § 3.344. In determining whether a veteran’s ability to function under the ordinary conditions of life and work, the Board will consider post-reduction evidence from the point of view of the Veteran working or seeking work.” 38 C.F.R. § 4.2 (2017). 

To the extent relevant to this case, the Veteran’s right knee disability had been rated 40 percent disabling under Diagnostic Code 5261 and 20 percent disabling under Diagnostic Code 5260: the ratings were reduced effective October 1, 2014.

Under Diagnostic Code 5260, flexion limited to 60 degrees is noncompensable. The criterion for a 10 percent rating is flexion limited to 45 degrees. The criterion for the next higher rating, 20 percent, is flexion limited to 30 degrees. The criterion for the maximum rating under this Diagnostic Code, 30 percent, is flexion limited to 15 degrees.

Under Diagnostic Code 5261, extension limited to 5 degrees is noncompensable. The criterion for a 10 percent rating is extension limited to 10 degrees. The criterion for a 20 percent rating is extension limited to 15 degrees. The criterion for the next higher rating, 30 percent, is extension limited to 20 degrees. The criterion for the next higher rating, 40 percent, is extension limited to 30 degrees. The criterion for the maximum rating under this Diagnostic Code, 50 percent, is extension limited to 45 degrees.

The Veteran disagrees with the reduction because he does not believe his right knee disability has improved.

In November 2011, the RO assigned initial 40 and 20 percent ratings for limitation of extension and flexion, respectively. The RO found that the evidence, namely the August 2011 VA examination report, showed flexion limited to 35 degrees and extension to 25 degrees. The report further indicates that the Veteran reported symptoms such as stiffness, swelling, fatigability, and constant 10/10 pain, which limited weightbearing activities. 

In June 2014, the RO reduced the 40 and 20 percent ratings, finding that VA and private treatment records show that the right knee disability had undergone substantial improvement since the August 2011 VA examination. The RO highlighted that a December 2012 VA examination report shows flexion to 140 degrees or greater without limitation of extension. The report also shows no additional functional limitation due to pain, with repetitive motion, or on weightbearing. In its June 2014 rating decision, the RO also noted that private treatment records showing flexion limited to 135 degrees without limitation of extension were consistent with the findings of the December 2012 VA examination report. See Private orthopedic specialist (January 9, 2014).

Here, the Board finds that the evidence shows that the right knee underwent actual improvement in everyday life since the August 2011 VA examination, which provided the basis for the initial 40 and 20 percent ratings for limitation of extension and flexion, respectively. Critically, a comparison of the August 2011 and December 2012 examination reports reveals drastic improvement in both flexion and extension, which would indeed improve right knee functionality throughout the course of everyday life. Specifically, the August 2011 VA examination report shows that the Veteran’s right knee was limited to 10 degrees of painful motion—flexion to 35 degrees and extension to 25 degrees. In contrast, the December 2012 VA examination shows that the Veteran’s right knee was capable of 140 degrees of pain-free motion—flexion to 140 or greater degrees and extension to 0 degrees. Additionally, a January 2014 private orthopedic record shows flexion to 135 degrees, which is consistent with the improvement shown during the December 2012 VA examination.

The Board acknowledges the Veteran’s assertion that his right knee disability has not improved since the August 2011 examination, but finds that the level of limitation shown on the August 2011 examination report appears to be an anomaly. In this regard, the record is absent lay or medical evidence describing symptoms or impairment as severe as that recorded in the August 2011 examination report. For instance, at no time since the August 2011 VA examination has the Veteran described functional limitation consistent with 10 degrees of right knee motion, which was shown on the August 2011 VA examination. Conversely, the above-discussed evidence shows that the Veteran’s right knee disability has been capable of far greater than 10 degrees of motion.

Finally, the Board finds unpersuasive the Veteran’s attorney representative’s assertion that the December 2012 VA examination report is inadequate for failure to estimate additional functional loss during flare-ups. See Appeal to Board (December 2018). Indeed, under Sharp v. Shulkin, when a VA examination is not conducted during a flare-up, the examiner is to elicit sufficient information to estimate the level of functional loss during a flare-up. 29 Vet. App. 26, 34 (2017). The Board finds that the Veteran’s case is distinguishable from Sharp as the December 2012 VA examination report shows that the Veteran denied right knee flare-ups.

Overall, the Board finds that the preponderance of the evidence shows that the Veteran’s service-connected right knee disability underwent actual improvement in everyday life since the August 2011 VA examination. As a result, the Board finds that the reduction of the prior 40 and 20 percent ratings, for limitation of extension and flexion, respectively, was proper, and, to this extent, the appeal is denied.

4. Entitlement to a 40 percent rating for the right ankle prior to June 27, 2017, is granted.

5. Entitlement to a 40 percent rating for the right ankle from June 27, 2017, to March 12, 2018, is granted.

The Veteran’s right ankle disability is currently rated 20 percent disabling prior to June 27, 2017, and 30 percent disabling thereafter. The disability is currently evaluated on the basis of ankylosis under Diagnostic Code 5270, which provides that a minimum 20 percent rating is warranted for ankylosis in plantar flexion, less than 30 degrees. A 30 percent rating is warranted for ankylosis in plantar flexion, between 30 and 40 degrees, or dorsiflexion, between zero and 10 degrees. A maximum 40 percent rating is warranted for ankylosis in plantar flexion between more than 40 degrees; ankylosis in dorsiflexion at more than 10 degrees; or ankylosis with abduction, adduction, inversion, or eversion deformity.

The Veteran contends that a 40 percent rating has been warranted throughout the pendency of the appeal as the evidence—e.g., the August 2011 VA examination report and a treatment note dated June 18, 2015—show ankylosis with inversion deformity. See, e.g., Appeal to Board (December 20, 2018); see also VA examination (June 2017) (indicting ankylosis).

Indeed, the August 2011 VA examiner expressly stated that “[e]xamination of the ankle reveals right inversion deformity.” On VA examination in August 2013, an examiner noted decreased range of motion (limited to 5 degrees) with no ankylosis; and the examiner did not address inversion deformity. In October 2013, a treating orthopedist stated that the right ankle was “very stiff with virtually no range of motion.” Additionally, the June 18, 2015, private treatment record states that the “right ankle is inverted with global loss of range of motion.” The Veteran also underwent VA examination in June 2017, at which time, the examiner noted ankylosis, but did not endorse inversion deformity.

Here, the Board finds that the lay and medical evidence pertaining to the presence of ankylosis and inversion deformity is in relative equipoise. Specifically, the Board cannot overlook the August 2011 VA examiner’s express assessment of inversion deformity. When coupled with the subsequent medical references to inversion and the Veteran’s report of continued inversion deformity, the Board finds that the evidence establishing inversion deformity is at least in relative equipoise with that against the presence of inversion deformity. More importantly, the August 2013 and June 2017 VA examinations that do not endorse inversion deformity do not address the validity of the lay and medical evidence showing inversion deformity. Similarly, the medical reports showing no ankylosis show extreme limitation of motion, and do not address the lay and medical reports of ankylosis. Accordingly, after resolving any doubt in the Veteran’s favor, the Board finds that the Veteran’s right ankle disability has resulted in ankylosis with inversion deformity.

Accordingly, the Board finds that, during the period under appeal, a 40 percent rating for the right ankle disability is warranted.

6. From April 1, 2016, entitlement to a TDIU is granted. 

Initially, the Board notes that the issue of entitlement to a TDIU prior to April 1, 2016, is discussed in the remand portion of the appeal.

From April 1, 2016, the Veteran’s disabilities meet the schedular criteria for a TDIU. Since that time, his service-connected disabilities of the right ankle, right knee, and bilateral feet have resulted in at least a combined 60 percent rating. As each of these disabilities was incurred in action, they are considered a single disability for purposes of evaluating entitlement to a TDIU. See 38 C.F.R. § 4.16 (2017). 

The Board finds that the Veteran’s service-connected disabilities alone have been of sufficient severity to produce unemployability, particularly in light of his education and employment experience. See Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993); Beaty v. Brown, 6 Vet. App. 532, 534 (1994).

Initially, the Board finds that the Veteran’s educational and employment experience is narrowly tailored to the physically demanding work of an automotive technician. See, e.g., VA Form 8940 (June 26, 2012) and Vocational Assessment (February 22, 2018) (noting that the Veteran completed a two-year automotive technician program). The Veteran was last employed as an automotive technician, until January 2012. See id.

The lay and medical evidence is largely in agreement that the Veteran’s service-connected disabilities of the bilateral lower extremities impair weightbearing activities—such as walking, prolonged standing, kneeling, bending, and twisting—so as to reasonably preclude him from obtaining or maintaining work consistent with his educational and employment history. See id.; Opinion from the Veteran’s private, treating orthopedic specialist (May 29, 2012); VA examinations (December 2012 and August 2013) (explaining that the Veteran’s right ankle disability impacts his ability to perform weightbearing activities). As such, this case turns on whether the Veteran’s service-connected disabilities preclude him from obtaining and maintaining non-physically demanding substantially gainful employment consistent with his education and employment experience.

In February 2018, a vocational expert opined that since at least May 2012, the Veteran’s knee and ankle disabilities have been so severe as to preclude substantially gainful employment. The expert explained that the disabilities preclude the Veteran from pursuing the physical demands of his work as an automotive technician. The expert also explained that the disabilities preclude the Veteran from competitive, sedentary work—citing the Veteran’s inability to sit, stand, and walk for prolonged periods of time; need for frequent, unscheduled breaks throughout the day; and inability to sustain concentration and focus due to constant right, lower extremity pain. The expert acknowledged prior unfavorable VA medical opinions regarding employability but explained that opining examiners’ expertise does not necessarily translate to vocational questions such as employability.

Under these circumstances, the Board ascribes significant probative value to the expert’s opinion as it was rendered by a subject matter expert and is based on a detailed review of the lay and medical evidence of record. The Board acknowledges that in December 2012, an examiner opined, without rationale, that the Veteran’s bilateral knee disabilities do not prohibit his ability to perform “normal job functions.” However, the Board ascribes minimal probative value to the VA examiner’s opinion as it lacks rationale, to include any meaningful definition of “normal job functions.”

Ultimately, the Board finds that since April 1, 2016, the Veteran’s service-connected disabilities, chiefly, his lower extremity disabilities, have impaired his ability to sit, stand, and walk for prolonged periods of time; have required frequent, unscheduled breaks throughout the day; and have resulted in pain that impairs sustained concentration and focus. When coupled with the limited scope of the Veteran’s educational and employment experience, it is less likely than not that he would be able to learn a new trade and obtain or maintain substantially gainful employment. After resolving any doubt in the Veteran’s favor, the Board finds that the Veteran’s service-connected disabilities alone have been of sufficient severity to produce unemployability, particularly in light of the Veteran’s education and employment experience. Accordingly, a TDIU is warranted.

REASONS FOR REMAND

1. Entitlement to a temporary total evaluation for convalescence of left knee condition following surgery is remanded. is remanded.

2. Entitlement to a TDIU prior to April 1, 2016, is remanded.

At this time, decision on the issues of entitlement to a temporary total evaluation for convalescence of the left knee disability following surgery and entitlement to a TDIU prior to April 1, 2016, is premature. Specifically, as this decision grants service connection for a left knee disability, the RO has yet to initially evaluate the disability, to include addressing the issue of entitlement to a temporary total evaluation. The initially assigned disability rating directly effects whether the Veteran meets the schedular criteria for a TDIU prior to April 1, 2016. Accordingly, these claims are remanded to the RO for appropriate action.

The matter is REMANDED for the following action:

After assigning an initial disability rating for the Veteran’s now-service-connected left knee disability, to include addressing entitlement to a temporary total evaluation for the left knee disability following surgery.

 

STEVEN D. REISS

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Joshua Castillo, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.