Citation Nr: 1536800 
Decision Date: 08/28/15 Archive Date: 09/04/15

DOCKET NO. 09-46 163 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cleveland, Ohio


THE ISSUES

1. Entitlement to service connection for cervical spine disability. 

2. Entitlement to a rating in excess of 50 percent for post-traumatic stress disorder (PTSD). 

3. Entitlement to a total disability rating for individual unemployability (TDIU).


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

R. Tyson, Associate Counsel


INTRODUCTION

The Veteran served on active duty from April 1969 to April 1971. 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from April 2007, December 2008, and January 2010 rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Cleveland, Ohio. 

The Veteran testified at a March 2015 hearing before the undersigned Veterans Law Judge. A complete transcript of the hearing is of record. 


FINDINGS OF FACT

1. The cervical spine condition occurred as a result of a fall down stairs. 

2. There is no persuasive evidence of a relationship between the fall and the Veteran's PTSD symptoms, including claimed nightmares. 

3. During the appeal period, the Veteran's PTSD manifested itself with nightmares, flashbacks, hyperstartle behaviors, avoidance behaviors, disrupted sleep, panic attacks, depressed mood, feelings of helplessness and hopelessness, decreased energy and motivation, decreased concentration, survivor's guilt, irritability, and hypervigilance resulting in occupational and social impairment with reduced reliability and productivity. 

4. For the entire appeals period, the Veteran did not meet the schedular requirements for a TDIU.

5. The competent and probative medical evidence demonstrates that the Veteran's sole service-connected disability, PTSD, when evaluated in association with his educational attainment and occupational experience, does not preclude all forms of substantially gainful employment.


CONCLUSIONS OF LAW

1. The criteria of service connection for a cervical spine disability have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2015).

2. For the entire appeals period, the criteria for a disability rating higher than 50 percent for PTSD were not met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.7, 4.130, Diagnostic Code 9411 (2015).

3. The criteria for a TDIU have not been met. 38 U.S.C.A. §§ 1155, 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 3.340, 3.341, 4.15, 4.16, 4.18 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Service Connection 

Service connection may be established for disability resulting from disease or injury incurred in or aggravated by active military service. 38 U.S.C.A. § 1110, 1131; 38 C.F.R. § 3.303. To establish service connection on a direct basis, the Veteran must show: (1) the existence of a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

In addition, the law provides that, where a veteran served ninety days or more of active service, and certain chronic diseases, listed under 38 C.F.R. § 3.309(a), become manifest to a degree of 10 percent or more within one year after the date of separation from such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309(a); Walker v. Shinseki, F. 3d 1331 (Fed. Cir. 2013). While the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time. Id. Alternatively, if the chronic disease was shown in service, with manifestations sufficient to identify the disease and sufficient observation to establish chronicity, then subsequent manifestations of the same chronic disease at any later date are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b).

Service connection may also be granted on a secondary basis for a disability that is proximately due to or aggravated by service-connected disease or injury. 38 C.F.R. § 3.310.

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). 

Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify"). Lay testimony is competent when it regards the readily observable features or symptoms of injury or illness. See Layno, 6 Vet. App. at 469; 38 C.F.R. § 3.159(a)(2) . 

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with a veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

A. Cervical Spine

The Veteran contends that his current cervical spine condition is related to his service-connected PTSD. He makes no contention that the neck injury arose directly from service, accordingly this decision will focus on secondary service connection. The Veteran has been service connected with PTSD since March 4, 2003. As of the most recent rating decision, the Veteran's PTSD is rated at 50 percent. 

The neck injury at issue occurred several decades after service. On December 1, 2005, the Veteran presented at the Ohio Valley Medical Center Emergency Trauma Unit after falling down 11 steps inside his home in the wee hours of the morning. Due to the Veteran's discomfort in the neck, he was placed in a collar and sent for CAT scan and x-rays. The CAT scan of the cervical spine revealed multiple cervical fractures. A few months after the injury in April 2006, the Veteran underwent a fusion of the C1-C2 vertebra. After surgery the Veteran reported doing well but has limited range of motion in the neck and pain with overuse. X-rays taken in January 2014 denoted osteopenia and degenerative disease present in the cervical spine. 

Multiple scenarios have been presented on the record as to the cause of the Veteran's fall. The Veteran in his claim of service connection asserts that he was having a nightmare, shot out of bed, and subsequently fell down the stairs. The Veteran's wife stated in an August 2013 notice that "the night [the Veteran] fell down the steps, [the Veteran] must have had another nightmare because he was again flailing about, kicking his legs and yelling something that [she] could not understand." At the initial evaluation for his neck in 2005, the Veteran reported drinking beers the evening before and did not exactly remember what had happened and if he lost consciousness. During an April 2006 Pittsburgh PA, VA Medical Center physical therapy consult, the Veteran reported missing a step going down and falling head first.

Based on the Veteran's contentions, the Veteran underwent a VA examination in January 2014 to determine the cause of the Veteran's neck injury. The examiner opined that it is less likely than not (less than 50 percent probability) that the Veteran's nightmare caused, either directly or indirectly, the fracture in his cervical spine. The rationale provided is that the record was devoid of complaints of violent nightmares leading up to the fall and after. The Veteran reported that his PTSD symptoms were minimal and were manageable in a mental health treatment note from October 2005. There was no evidence of sleepwalking. Furthermore, the Veteran never mentioned nightmares immediately following the fall. 

In the October 2005 mental health follow up discussed by the January 2014 examiner, the treating professional noted that the Veteran did not seem to have anxiety or depression. The Veteran reported having some dreams of combat, intrusive thinking and an increased startle response. However, the Veteran reported that as long as the symptoms remained at their current level, he could deal with them. However, if the symptoms increased, he would need help. 

In reviewing the evidence - especially the medical record close in time to the accident - the Board finds that the fall resulting in the cervical spine injury was a result of an unfortunate incident, rather than any nightmare experienced by the Veteran. At the time of his initial evaluation and subsequent appointments, the Veteran reported either not remembering what happened or that the fall was an accident. These statements are more probative than his later statements since they were made contemporaneously with the fall and in the course of seeking medical treatment. The story regarding the nightmares is one noted several years after the fall and in connection with a claim for benefits for the cervical spine disability, which places doubt in the credibility of the Veteran's statements. The Veteran's wife also attempts to corroborate the Veteran's story, but comes across as speculative rather than factual. Accordingly, the more persuasive evidence does not indicate that the fall resulted from any PTSD symptoms, including nightmares, and the claim for service connection for a cervical spine condition is denied. 

II. Increased Rating for PTSD

Disability ratings are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing the symptomatology with the criteria set forth in the Schedule for Rating Disabilities (Rating Schedule). 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10.

In rating a disability, the Board considers the current examination reports in light of the whole recorded history to ensure that the current rating accurately reflects the severity of the condition. The Board has a duty to acknowledge and consider all regulations that are potentially applicable. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). The medical as well as industrial history is to be considered, and a full description of the effects of the disability upon ordinary activity is also required. 
38 C.F.R. §§ 4.1, 4.2, 4.10.

Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Reasonable doubt regarding the degree of disability will be resolved in the veteran's favor. 38 C.F.R. § 4.3. 

In view of the number of atypical instances it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified. Findings sufficiently characteristic to identify the disease and the disability therefrom, and above all, coordination of rating with impairment of function will, however, be expected in all instances. 38 C.F.R. § 4.21. At the time of an initial rating, separate ratings can be assigned for separate periods of time based on facts found, a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119, 126 (1999). Where entitlement to compensation has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Nevertheless, where the evidence contains factual findings that show a change in the severity of symptoms during the course of the rating period on appeal, assignment of staged ratings would be permissible. Hart v. Mansfield, 21 Vet. App. 505 (2007).

This claim arises from an April 2007 rating decision, which continued the rating for the Veteran's service-connected PTSD at 50 percent. The Veteran contends that he is entitled to a higher rating. He feels that he meets the 70 percent criteria at a minimum since he cannot work and is totally disabled. He does not got to school, he only has his wife for "family relations" and is deficient in judgment, thinking, and mood. He also asserts that he is depressed most of the time and cannot establish and maintain relationships. He also reports constant intrusive thoughts of Vietnam, is constantly vigilant and suspicious of other people around him, and has nightmares at least once a week. 

Psychiatric conditions are rated under the General Rating Formula for Mental Disorders. 38 C.F.R. § 4.130, Diagnostic Code 9411. 

A 50 percent rating requires an occupational and social impairment with reduced reliability and productivity due to such symptoms as: 

* flattened affect
* circumstantial, circumlocutory, or stereotyped speech
* panic attacks more than once a week
* difficulty in understanding complex commands
* impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks) 
* impaired judgment
* impaired abstract thinking
* disturbances of motivation and mood 
* difficulty in establishing and maintaining effective work and social relationships 

A 70 percent rating requires an occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as:

* suicidal ideation
* obsessional rituals which interfere with routine activities
* speech intermittently illogical, obscure, or irrelevant
* near-continuous panic or depression affecting the ability to function independently, appropriately and effectively
* impaired impulse control (such as unprovoked irritability with periods of violence)
* spatial disorientation 
* neglect of personal appearance and hygiene
* difficulty in adapting to stressful circumstances (including work or a worklike setting)
* inability to establish and maintain effective relationships

A 100 percent rating requires a total occupational and social impairment, due to such symptoms as: 

* gross impairment in thought processes or communication
* persistent delusions or hallucinations
* grossly inappropriate behavior
* persistent danger of hurting self or others
* intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene)
* disorientation to time or place
* memory loss for names of close relatives, own occupation, or own name 

The "such symptoms as" language means "for example," and does not represent an exhaustive list of symptoms that must be found before granting the rating of that category. Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). The list of examples provides guidance as to the severity of symptoms contemplated for each rating. Id. However, this fact does not make the provided list of symptoms irrelevant. See Vasquez-Claudio v. Shinseki, 713 F.3d 112, 116-17 (Fed. Cir. 2013). The Veteran must still demonstrate either the particular symptoms associated with the rating sought, or other symptoms of similar severity, frequency, and duration. Id. at 117. 

Throughout the appeals process, the Veteran has experienced multiple symptoms due to his PTSD including, nightmares, flashbacks, hyperstartle behavior, avoidance behavior, disrupted sleep, panic attacks, depressed mood, feelings of helplessness and hopelessness, decreased energy and motivation, decreased concentration, survivor's guilt, and hypervigilance. These symptoms have appeared in a variety of levels. However, the Board finds the severity of these symptoms fails to warrant a rating higher than 50 percent based on the limitations presented in the functional areas of work, school, family and social relations, judgment, thinking, and mood. 

Work/School

In Pittsburgh, PA VA Medical Center (VAMC) therapy notes as early as April 2006, the Veteran reported working in construction for 15 years and as a miner for 10 years. The Veteran has been unemployed since December 2005 after injuring his neck. 

When the Veteran worked he would work in small teams between two to five people at most. See Board Hearing Testimony; September 2009 VA Examination Report. He functioned best in this type of environment and usually got along with his co-workers and did not normally miss any days. Id. The September 2009 VA examiner noted that PTSD did not have a significant impact on the Veteran's previous work because he worked in fairly small groups and in primarily rural areas; working in larger groups or more congested areas, such as a city, would have likely exacerbated his PTSD symptoms. 

The Veteran tries to avoid things that remind him of his time in Vietnam. However, these behaviors appear to make the Veteran more focused in a work setting; as noted in a March 2009 telepsychiatry appointment through the Wheeling Vet Center, the Veteran reported that having too much time on his hands causing him to think of the past so he tends to focus on work. 

Even though the Veteran has been unemployed, he engages in activities in and around his home similar to working a full-time job. At the January 2014 VA examination, the Veteran reported spending most of his time on his property doing chores inside and around his home. He does all the yard work. He maintains chickens and goats on his property which he cares for. He also reports taking on various projects. 

The Veteran has not attained any additional education throughout the appeal period, so functioning in a school setting is not at issue. 

Family and Social Relations

The Veteran has been married to his current wife since 2000. He reported in a March 2009 VA psychiatric consult that they live in the same home and his relationship with his wife is "good" and that they have "squabbles" like other couples. The Veteran has two children who he only sees on major holidays. He also has four grandchildren. He denies any tension or strain within his familial relationships. 

The Veteran has two friends. He hunts with one of his friends every other week. Other than that the Veteran does not engage in any outside social activities. He attends group therapy once a week since April 2009 and has presented as alert and oriented to person, time and place, pleasant and cooperative throughout the meetings. 

The Veteran generally has good relationships with his family, including his wife, and children, and friends. However, the Veteran has a history of having trust issues including those closest with him, as noted in the September 2009 VA examination. The Veteran has a history of being detached from people and prefers to stay at home. He also has trouble expressing his emotions for people including his own family.

The Veteran's trust issues are also evidenced by his hypervigilance behaviors. The Veteran has a tendency to look at who is around him, especially when outside his home. If he goes out with his wife to a restaurant, he must sit in a booth or with his back against the wall. If someone surprises or startles him, the Veteran admits that he may take a swing at someone in an instance where someone attempts to wake him up. This issue was raised in a letter provided by the Veteran's sister. 

As noted in the work section, the Veteran has difficulty dealing with crowds. This has affected his ability to go on outings outside of his home. At the January 2014 VA examination, the Veteran reported only leaving his home two to three times per week due to his general dislike for people. He relies on his wife to do the household shopping. 
Judgment

The Veteran's PTSD has not created any reduction in judgment as asserted by the Veteran. Throughout the appeal period, treating mental health professionals at VA and at the Wheeling Vet Center report the Veteran's insight and judgment as good and intact. There is no history of suicidal or homicidal ideation present, or evidence of poor impulse control. For example, during the January 2014 examination, the Veteran had missed the mid-day transportation back to his local area by a few minutes and needed to wait a few hours for the next bus. The Veteran did not present as distressed or angry towards the situation. He merely waited for the next bus. 

Thinking

The Veteran's thinking has remained intact throughout the appeal period despite PTSD symptoms. Although the Veteran consistently reports difficulties concentrating such as paying attention to conversations, or driving, as noted in the September 2009 VA examination report, these difficulties are not readily identifiable in his interactions with VA personnel. The Veteran has been able to engage with medical professionals and VA personnel and maintain good eye contact, and his attention and concentration have been deemed adequate. Furthermore, the Veteran's thought process has presented as clear, coherent, and goal-directed without evidence of formal thought disorder or psychosis. 

The only issue noted is the Veteran's foreshortened sense of the future. During the September 2009 VA examination, when the Veteran was asked by the examiner about the future, the Veteran admitted that he did not plan for the future. This in itself did not change the examiner's assessment of the Veteran's thought process. 

Mood

The Veteran's PTSD affects his mood. The Veteran has a history of nightmares. In September 2009, the Veteran reported them occurring once a week. However, in more recent VA treatment history from 2010 through 2014, the Veteran's nightmares have reduced to only occurring on an irregular basis. 

The Veteran's mood has presented as subdued. He has consistently denied high levels of anxiety or full blown panic attacks through the appeal period when talking with VA and Vet Center psychiatric personnel. He has a history of depressed mood.

During the September 2009 VA examination, the Veteran reported having significant issues related to anger. He is easily irritated and will sometimes raise his voice. His irritability is noted throughout the record. The Veteran has also exhibited occasional depressed mood, but generally is calm and pleasant throughout the record and could get to a point of telling jokes, as is seen in a March 2009 VA evaluation. 

The Veteran's mood may also be aggravated by his sleep disturbance. He reports getting between four to five hours of sleep regularly at night, but the sleep is non-restorative, as noted in the January 2014 VA examination. He has had panic attacks in the past, but in the January 2014 VA examination, he reported the last one was in 2009. 

In assessing the Veteran's PTSD symptoms as against the functional areas, the Veteran does not have either an occupational or social impairment in most areas or is shown to have a total occupational or social impairment, which would be warranted in higher rating criteria. At worse, the Veteran has shown difficulty in mood and family relations, as discussed above. 

Extraschedular Considerations 

In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321. The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular ratings for that service-connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008).

Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. 

In the second step of the inquiry, however, if the schedular rating does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). 
When the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step, a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. Id. 

Turning to the first step of the extraschedular analysis, the Board finds the rating criteria specifically contemplate the symptomatology of the Veteran's service-connected psychiatric disability. The Veteran reports nightmares, flashbacks, hyperstartle behaviors, avoidance behaviors, disrupted sleep, panic attacks, depressed mood, feelings of helplessness and hopelessness, decreased energy and motivation, decreased concentration, survivor's guilt, irritability, and hypervigilance. Even though all symptoms listed are not specifically enumerated in the rating criteria, the severity, frequency, and duration of these symptoms are found to be equivalent to the 50 percent criteria and no higher. 

Even if the Board concluded that some or all of the Veteran's symptoms were exceptional, referral to the Director of Compensation Service would not be warranted. The Veteran has not had marked interference in employment due to PTSD. The Veteran stopped working in construction due to a cervical spine injury. This injury has not been found related to his PTSD. Furthermore, the Veteran has had no hospitalizations due his PTSD, as reported by him on a June 2014 Wheeling Vet Center (noted in Pittsburgh, PA VA Medical Center records) telepsychiatry progress note. Accordingly, referral for consideration of an extraschedular rating is not warranted. 

The Veteran has not expressly raised the matter of entitlement to an extraschedular rating. His contentions have been limited to the ratings associated with his PTSD, which is presently his only service-connected disability. As explained above in denying higher ratings, the Board considered the criteria for higher schedular ratings, but it upheld the rating as assigned because the rating criteria are adequate. Accordingly, referral for extraschedular consideration is not warranted under the circumstances of this case. Johnson v. McDonald, 2013-7104, 2014 WL 3844196 (Fed. Cir. Aug. 6, 2014).



III. TDIU - Legal Criteria

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities (Rating Schedule), which is based on the average impairment of earning capacity. 38 U.S.C.A. § 1155. Total disability is considered to exist when there is any impairment which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. Total disability may or may not be permanent. 38 C.F.R. § 3.340(a)(1). Total ratings are authorized for any disability or combination of disabilities for which the Rating Schedule prescribes a 100 percent rating. 38 C.F.R. § 3.340(a)(2).

A TDIU may be assigned when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. The inability to secure a substantially gainful occupation is determined in a two-part analysis. 

Generally, the Veteran must first meet a schedular requirement. If the veteran has only one service-connected disability, it must be rated at 60 percent or more; if he has two or more service-connected disabilities, at least one disability must be rated at 40 percent or more, with sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a).

In exceptional circumstances, where the veteran does not meet the aforementioned percentage requirements, a total rating may be assigned on an extraschedular basis upon a showing that he is unable to obtain or retain substantially gainful employment. 38 C.F.R. §§ 3.321(b)(1), 4.16(b). The Board is unable to award an extraschedular TDIU in the first instance, and instead must first determine whether referral to the Director of Compensation is warranted. Bowling v. Principi, 15 Vet. App. 1, 10 (2001). 

The determination of a referral or a grant, if the schedular requirement is met, is dependent on the second part of the analysis - "whether the veteran's service connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). In analyzing the severity of these disabilities, VA may consider a veteran's level of education, special training, and previous work experience, but may not consider a veteran's advancing age and nonservice-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19; Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). 

Substantially gainful employment is defined as work that is more than marginal, which permits the individual to earn a "living wage." See Moore v. Derwinski, 1 Vet. App. 356 (1991). Marginal employment is defined as an amount of earned annual income that does not exceed the poverty threshold determined by the Census Bureau. 38 C.F.R. § 4.16(a). Marginal work is not considered substantially gainful employment. 

In reaching a decision, it is necessary that the record reflect some factor which takes the case outside the norm with respect to a similar level of disability under the rating schedule. 38 C.F.R. §§ 4.1, 4.15; Van Hoose, 4 Vet. App. 361. The fact that a claimant is unemployed or has difficulty obtaining employment is not enough. The question is whether or not the Veteran is capable of performing the physical and mental acts required by employment, not whether he can find employment. See Beaty v. Brown, 6 Vet. App. 532, 538 (1994).

Analysis

The Veteran contends that a TDIU is warranted due to a combination of PTSD and a cervical spine disability. The Veteran is service connected for only one disability, PTSD, currently rated at 50 percent. This Board decision has denied service connection for the cervical spine disability. A claim for TDIU examines the effects of service-connected disabilities on employability rather than all noted disabilities. With a rating of 50 percent of record, the Board evaluated the Veteran's claim on an extraschedular basis since the Veteran failed to meet the 60 percent schedular threshold for a single service-connected disability. 38 C.F.R. §§ 3.321(b)(1), 4.16(b). 


1. Education and Work Experience

On the Veteran's December 2009 Application for Increased Compensation Based on Unemployability, the Veteran reported having a high school diploma with no other formalized training.

In the VA treatment records, the Veteran has reported a combined 25 year work history in the construction industry as a carpenter and as a mining equipment operator. The Veteran last worked in December 2005. He states he was forced to retire after injuring his cervical spine. 

The Board notes that the Veteran's high school education and limited work history in laborious work may limit his employment opportunities. However, these limitations do not automatically translate to the Veteran being limited to marginal employment or being unemployable. The Board looks at other factors to include the impact of the Veteran's service-connected disability on his employability. 

2. Impact of Service-Connected PTSD on Employability

The Veteran stopped work due to a cervical spine injury. As noted in the above discussion on the effect of PTSD in the functional areas, the PTSD does not make the Veteran unemployable, and in some ways drives the Veteran to work more. 

The Veteran's PTSD causes him to socially withdraw from others. He dislikes being in crowds of people. Based on his hearing testimony and discussions with VA examiners, the Veteran works best in environments where he works on small teams of between two and five people. The Veteran has a history of getting along with people, and despite his statements of distrusting others, the Veteran has shown he is capable of carrying out appropriate conversation and interacting with others to the point of being able to tell jokes to persons other than close friends and family. The September 2009 VA examiner noted that the Veteran benefitted from his previous work environments that limited him to working with a few people at a time in rural locations. If the Veteran had to work in larger groups or more congested areas, such as a city, his symptoms would be exacerbated. Accordingly, any work environment would have to take into account the Veteran's need to associate with only a few people at a time. 

The Veteran also engages in avoidance behavior in his attempt to avoid triggers of Vietnam combat flashbacks. However, the Veteran has noted to Vet Center mental health professionals that having too much free time causes him to think about the past, so he tends to focus on work. This is consistent with the Veteran's behavior at home, being engaged with a number of projects including doing chores inside and outside his home, and caring for farm animals on his property. 

The Board recognizes that the Veteran may experience periods of depressed mood, irritability and losses of concentration, but the level of severity of these issues as discussed above have not significantly interfered in the Veteran's overall functioning. 

Based on the Veteran's statements, and the treatment record, the Board finds the Veteran's PTSD presently does not preclude him from engaging in full-time employment that takes into his account to work independently and/or in small groups of no more than five people. He retains the mental capacity to work in his prior employment, although he states he no longer has the physical capacity to work in his prior employment, but that is due to a non-service connected cervical spine issue, rather than PTSD. Accordingly a claim for a TDIU is denied. 


IV. VA's Duties to Notify and Assist 

VA satisfied its notice requirement to the Veteran with respect to his claims in June 2008, December 2009 and February 2010 notices. Neither the Veteran nor his representative has pled prejudicial error with regard to timing or content. Shinseki v. Sanders, 129 S. Ct. 1696 (2009). As the contents of the notices fully comply with the requirements of 38 U.S.C.A. § 5103 and 38 C.F.R. § 3.159, the Board concludes that VA satisfied its duty to notify the Veteran. 

VA met its duty to assist the Veteran by obtaining all available relevant evidence to the Veteran's claim. To that end, the VA obtained the Veteran's service, and post-service treatment records. The Veteran has been presented multiple opportunities for examination of his service-connected PTSD and one occasion for the cervical spine disability. The Board finds these examinations to be adequate. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The examiners that performed the examinations were medical professionals and provided the Board sufficient information to render a decision.

The Veteran was also provided a hearing with the undersigned Veterans Law Judge (VLJ) in March 2015. VA also has duties when an RO official or VLJ conduct a hearing. 38 C.F.R. 3.103(c)(2); Bryant v. Shinseki, 23 Vet. App. 488 (2010). When a VLJ conducts a hearing, the VLJ must fulfill two duties: (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, during the 2015 hearing, the undersigned VLJ specifically addressed the Veteran's claimed service connected and already service connected disabilities by asking the Veteran a series of questions to elicit information as to their etiology and the level of severity. The VLJ also asked questions to determine whether additional relevant evidence existed that had not been obtained, such as whether the Veteran had recently received any treatment. There is no indication that the Veteran was prejudiced in any way by the conduct of the Board hearing. As such, the Board finds that, consistent with Bryant, the VLJ complied with the duties set forth in 38 C.F.R. 3.103(c)(2), and that any error in notice provided during the hearing constitutes harmless error.

Since neither the Veteran nor his representative made VA aware of any other relevant evidence that would need to be obtained, the Board finds that no further development is required. Appellate review proceeded without prejudice. See Bernard v. Brown, 4 Vet. App. 384 (1993). 



ORDER

Service connection for a cervical spine condition is denied. 

A rating in excess of 50 percent for service-connected PTSD is denied. 

A TDIU is denied. 




______________________________________________
MICHELLE L. KANE
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs