Citation Nr: 1761215 
Decision Date: 12/29/17 Archive Date: 01/02/18

DOCKET NO. 11-22 911 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUES

1. Entitlement to a disability rating for service-connected post-traumatic stress disorder (PTSD) with major depressive disorder in excess of 50% from June 21, 2010 until January 8, 2015.

2. Entitlement to a disability rating for service-connected PTSD with major depressive disorder in excess of 70% from January 9, 2015 to March 27, 2016.

3. Entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities for the period of appeal from March 30, 2010 to December 10, 2013.

4. Entitlement to TDIU due to service-connected disabilities for the period of appeal from December 11, 2013 to January 12, 2014.





REPRESENTATION

Appellant represented by: Allen Gumpenberger, Agent


ATTORNEY FOR THE BOARD

A. Boal, Associate Counsel


INTRODUCTION

The Veteran served on active duty from July 1990 to September 1990, December 1990 to July 1991, and from May 1991 to November 1995.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an October 2010 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Muskogee, Oklahoma.

In a June 2011 rating decision, the RO increased the Veteran's disability rating for PTSD to 50% effective June 21, 2010. In an April 2015 rating decision, the RO increased the Veteran's disability rating for PTSD to 70 percent disabling effective January 9, 2015. A May 2016 rating decision granted a 100 percent evaluation for the PTSD effective March 28, 2016. As the claimant will generally be presumed to be seeking the maximum benefit allowed by law and regulation, the claim remains in controversy when less than the maximum available benefit is awarded. AB v. Brown, 6 Vet. App 35 38 (1993). Therefore, as the Veteran was not awarded the maximum rating for PTSD with major depressive disorder, the issue remains in appellate status. 

The Veteran has raised the issue of unemployability due to his service-connected disabilities. See VA Form 21-8940, July 2010 and December 2013. The Court held in Rice v. Shinseki, 22 Vet. App. 447 (2009), that a claim of entitlement to a TDIU is part of an increased rating claim when such claim is raised by the record. A December 2014 rating decision granted TDIU effective January 13, 2014. Pursuant to Rice, the issue of entitlement to a TDIU prior to that date is currently before the Board since the issue of unemployability is raised by the record.

The Board previously considered this appeal in November 2013 and August 2015 and remanded the TDIU claim for further development in order to request two VA examination addendum opinions. Also, the issue of extraschedular TDIU was referred to the Director of Compensation Service and subsequently adjudicated by that office. That development was completed, and the case returned to the Board for further appellate review.


FINDINGS OF FACT

1. For the period of appeal from June 21, 2010 to January 8, 2015, the Veteran's PTSD does not more nearly approximate that of occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking or mood.

2. For the period of appeal from January 9, 2015 to March 27, 2016, the Veteran's PTSD does not more nearly approximate that of total occupational and social impairment.

3. For the period of appeal from March 30, 2010 to December 10, 2013, the Veteran's service-connected disabilities did not preclude him from securing and following substantially gainful employment consistent with his educational and occupational experience.

4. For the period of appeal from December 11, 2013 to January 12, 2014, the Veteran's service-connected disabilities precluded him from securing and following substantially gainful employment consistent with his educational and occupational experience.


CONCLUSIONS OF LAW

1. For the period of appeal from June 21, 2010 to January 8, 2015, the criteria for an evaluation in excess of 50 percent for PTSD have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1-4.14, 4.130, Diagnostic Code 9411 (2017).

2. For the period of appeal from January 9, 2015 to March 27, 2016, the criteria for an evaluation in excess of 70 percent for PTSD have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1-4.14, 4.125-4.130, Diagnostic Code 9411 (2017).

3. For the period of appeal from March 30, 2010 to December 10, 2013, the criteria for entitlement to a TDIU have not been met. 38 U.S.C. §§ 1155 , 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.321, 3.340, 3.341, 4.15, 4.16, 4.19 (2017).

4. For the period of appeal from December 11, 2013 to January 12, 2014, the criteria for entitlement to a TDIU have been met. 38 U.S.C. §§ 1155 , 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.321, 3.340, 3.341, 4.15, 4.16, 4.19 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the Veteran and his representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim. 38 U.S.C. 
 § 5103(a). In accordance with 38 C.F.R. § 3.159 (b)(1), proper notice must inform the Veteran of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the Veteran is expected to provide. Such notice should also address VA's practices in assigning disability evaluations and effective dates for those evaluations. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). This notice was provided to the Veteran in a letters sent in July 2010 and December 2013. Accordingly, the duty to notify has been fulfilled.

VA also has a duty to assist the Veteran with the development of facts pertinent to the appeal. 38 U.S.C. § 5103A; 38 C.F.R. § 3.159 (c). This duty includes the obtaining of "relevant" records in the custody of a federal department or agency under 38 C.F.R. § 3.159 (c)(2), as well as records not in federal custody (e.g., private medical records) under 38 C.F.R. § 3.159 (c)(1). VA will also provide a medical examination if such examination is determined to be "necessary" to decide the claim. 38 C.F.R. § 3.159 (c)(4).

The Board finds that all necessary development has been accomplished. The RO has obtained the Veteran's VA treatment records and private treatment records identified by the Veteran, along with records from the Social Security Administration (SSA). Neither the Veteran nor his representative has identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. 

The Veteran was afforded VA examinations in May 2003, July 2008, and October 2014. The examiners, medical professionals, obtained an accurate history and listened to the Veteran's assertions. The Board finds that the examinations are adequate and contain sufficient information to decide the issues on appeal. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007).

Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio, 16 Vet. App. 183 (2002).

Increased Rating for PTSD

The Board has reviewed all of the evidence in the Veteran's claims file with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Consequently, the following discussion will be limited to the evidence the Board finds to be relevant.

Law and Regulations 

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civil occupations. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.321(a), 4.1.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Nevertheless, where the evidence contains factual findings that show a change in the severity of symptoms during the course of the rating period on appeal, assignment of staged ratings would be permissible. See Fenderson v. West, 12 Vet. App. 119 (1999).

The rating criteria for rating mental disorders reads as follows: a 100 percent rating requires total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions of hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation or own name. 38 C.F.R. § 4.130.

A 70 percent rating requires occupational and social impairment, with deficiencies in most areas, such as work, school, family relations judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. Id.

A 50 percent rating requires occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g. retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing effective work and social relationships. Id.

The United States Court of Appeals for Veterans Claims (Court) has held that Global Assessment of Functioning (GAF) scores are a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995); Richard v. Brown, 9 Vet. App. 266 (1996) (citing the American Psychiatric Association's DIAGNOSTIC AND STATISTICAL MANUAL FOR MENTAL DISORDERS (4th ed.) (DSM-IV), p. 32). 

GAF scores ranging from 61 to 70 reflect some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, and has some meaningful interpersonal relationships. Id. 

Scores ranging from 51 to 60 reflect more moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Id. 

Scores ranging from 41 to 50 reflect serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). Id.

Scores ranging from 31 to 40 reflect some impairment in reality testing or communications (e.g. speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g. depressed man avoids friends, neglects family, and is unable to work). Id.

The Secretary of VA recently amended the portion of the Schedule for Rating Disabilities dealing with psychiatric disorders and the associated adjudication regulations to remove outdated references to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV), and replace them with references to the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5). However, the amended provisions do not to apply to claims that were pending before the Board (i.e., certified for appeal to the Board) on or before August 4, 2014, even if such claims are subsequently remanded to the AOJ. The instant appeal was initially certified to the Board in September 2011. Therefore, the pre-August 2014 version of the Schedule for Rating Disabilities is for application in the instant appeal.

Evaluation under § 4.130 is symptom-driven, meaning that symptomatology should be the fact-finder's primary focus when deciding entitlement to a given disability rating under that regulation. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-17 (Fed. Cir. 2013). The Federal Circuit explained that the frequency, severity, and duration of the symptoms also played an important role in determining the rating. Id. at 117. Significantly, however, the symptoms listed under the rating criteria are meant to be examples of symptoms that would warrant the rating, but are not meant to be exhaustive, and the Board need not find all or even some of the symptoms to award a specific rating. Mauerhan v. Principi, 16 Vet. App. 436, 442-43 (2002). If the evidence shows that the Veteran suffers symptoms listed in the rating criteria or symptoms of similar severity, frequency, and duration, that cause occupational or social impairment equivalent to what would be caused by the symptoms listed in the criteria for a particular rating, the appropriate equivalent rating will be assigned. Id. at 443; see also Vazquez-Claudio, 713 F.3d at 117.

Once the evidence has been assembled, it is the Board's responsibility to evaluate the evidence. 38 U.S.C. § 7104 (a). The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. The Board must analyze the credibility and probative value of the evidence, account for the persuasiveness of the evidence, and provide reasons for rejecting any material evidence favorable to the claimant. Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996). The Board assesses both medical and lay evidence. In addressing lay evidence and determining its probative value, if any, attention is directed to both competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted"). See Layno v. Brown, 6 Vet. App. 465, 469 (1994). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102, 4.3. 

In Gilbert v. Derwinski, 1 Vet. App. 49, 54 (1990), the Court stated that "a veteran need only demonstrate that there is an 'approximate balance of positive and negative evidence' in order to prevail." To deny a claim on its merits, the evidence must preponderate against the claim. See also Alemany v. Brown, 9 Vet. App. 518, 519 (1996).



The period of appeal from June 21, 2010 to January 8, 2015

The Veteran contends that his PTSD is worse than it is rated.

After careful review, the Board finds that for the period of appeal from June 21, 2010 to January 8, 2015, the Veteran's PTSD did not more closely approximate the criteria for a rating in excess of 50 percent rating under Diagnostic Code 9411. 

The Veteran attended a VA examination in July 2010 for his PTSD. The Veteran reports suffering from anxiety, agitation, irritability, intrusive recollections, avoidance behaviors, physiological arousal. The symptoms were reported to be constant, continuous or ongoing. The Veteran also reports that he is no longer participating in previously enjoyed activities and suffers from poor task completion at home and work. He had a GAF of 58. Appearance and hygiene were appropriate and orientation was normal. Affect and mood showed anxiety, PTSD, depressed mood impacting work and home life, social withdrawal, suspiciousness, persistent anxiety, sleep disturbance, avoidance, exaggerated startle response and sympathetic nervous system. Communication and speech was normal although he showed some impaired attention or focus that interferes with some work performance and task completion. Panic attacks were absent. He had a history of intermittent delusion including exaggerated fear of attack but at the time of examination no delusion was noted. There was no delusion or hallucination observed. The Veteran's thought processes were noted to be appropriate. The Veteran was able to understand directions and did not have slowness of thought or confusion. The Veteran did not appear to have impaired judgment or memory impairment. Suicidal and homicidal ideation was absent. He was noted to be able to provide self-care and was able to manage benefit payments in his own best interest. His orientation was within normal limits and panic attacks were absent.

The Veteran attended group and individual psychotherapy sessions at the VA Medical Center in Oklahoma City, Oklahoma. The Veteran's medical records indicate that he was oriented with no impairment of insight, judgment, or memory, and appropriately dressed and groomed when attending therapy and his speech was coherent and relevant. The Veteran's medical records also indicate no suicidal or homicidal ideation during the time on appeal. GAF scores ranged from 55 to 58.

The Board finds that for this period of the appeal, the evidence establishes that the PTSD symptoms did not more nearly approximate occupational and social impairment with deficiencies in most areas to warrant a 70 percent rating under Diagnostic Code 9411. In this case, for the relevant time period, the Veteran was not found to have suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively, impaired impulse control, spatial disorientation, or neglect of personal appearance and hygiene. 38 C.F.R. § 4.130. Rather, as outlined above, the Veteran was consistently reported to have intact judgment and insight and was oriented in all spheres. The Veteran denied suicidal ideation and obsessional rituals. Speech and thought process was normal. While the Veteran reported having anxiety, he was not noted to have near continuous panic affecting his ability to function. In fact, the examiner noted that he was able to provide self-care and handle his own finances. While the Veteran reported irritability, it never was noted to result in violence. 

Furthermore, considering the totality of the symptoms the Veteran does have (irritability, anxiety, flashbacks, difficulty sleeping, avoidance, decreased focus etc.), the record does not reflect that these symptoms are of a frequency and severity akin to occupational and social impairment in most areas. See Mauerhan v. Principi, 16 Vet. App. 436 (2002) (stating that use of the term "such as" in 38 C.F.R. § 4.130 demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating). He was noted to be employed at the time of the examination and reported good relationship with his supervisor and co-workers. He also described good relationships with his mother, father, and one sibling. 

The Veteran's GAF scores during the period have ranged from 55 to 58, reflecting moderate symptoms. The Veteran was never noted to have a GAF in the range of 41 to 50 reflecting serious symptoms or serious impairment in social, occupational or school functioning. Thus, the GAF scores also do not support a higher rating.

The Veteran's symptoms were not of such frequency, severity, and duration that they resulted in occupational and social impairment with deficiencies in most areas to warrant a higher 70 percent evaluation. Accordingly, for the period of appeal from June 21, 2010 to January 8, 2015, the Veteran's PTSD warranted a 50 percent evaluation. 

The period of appeal from January 9, 2015 to March 27, 2016

The Board finds that for the period of appeal from January 9, 2015 to March 27, 2016, the Veteran's PTSD did not more closely approximated the criteria for a rating in excess of 70 percent rating under Diagnostic Code 9411. 

The Veteran attended another VA examination in January 2015 for his PTSD. The Veteran reported suffering from chronic depression and anxiety, describing "constant" flashbacks, exaggerated startle response ("I hear a loud noise and I hit the floor"), intrusive memories, memory and concentration problems, nightmares several times per week, sleep disruption, anxious physiological arousal, anger and
irritability, and fatigue. During the VA exam, the Veteran's affect was anxious, as evidenced by tense posture, rapid speech, lack of eye contact, and frequent glancing out the windows. He grew irritable as he described his numerous attempts at trying to get help or improve his symptoms. He suffered from the following symptoms: depressed mood, anxiety, suspiciousness, chronic sleep impairment, mild memory loss, such as forgetting names, directions or recent events, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances, including work or a worklike setting, inability to establish and maintain effective relationships, recurrent, involuntary, and intrusive distressing memories of the traumatic events, dissociative reactions (e.g., flashbacks) in which the individual feels or acts as if the traumatic events were recurring, intense or prolonged psychological distress at exposure to internal or external cues that symbolize or resemble an aspect of the traumatic events, marked physiological reactions to internal or external cues that symbolize or resemble an aspect of the traumatic events. The Veteran also displayed symptoms of persistent and exaggerated negative beliefs or expectations about oneself, others, or the world (e.g., "I am bad," "No one can be trusted, "The world is completely dangerous," "My whole nervous system is permanently ruined"), persistent, distorted cognitions about the cause or consequences of the traumatic events that lead to the individual to blame himself/herself or others, persistent negative emotional state (e.g., fear, horror, anger, guilt, or shame), markedly diminished interest or participation in significant activities, feelings of detachment or estrangement from others, and persistent inability to experience positive emotions (e.g., inability to experience happiness, satisfaction, or loving feelings). The Veteran's symptoms cause clinically significant distress or impairment in social, occupational, or other important areas of functioning. 

The Veteran's medical records do not show that he experienced gross delusions or hallucinations, persistent delusions or hallucinations, grossly inappropriate behavior, persistent danger of hurting himself or others, or disorientation as to time and place, or memory loss of names of relatives, occupation or his own name. In fact, the records reflect he was generally found to be oriented in all spheres and never described lack of memory to the extent he could not remember his own name or names of loved ones. Furthermore, the symptoms the Veteran does have (flashbacks, anxiety, startle response, avoidance, concentration problems, sleep trouble) are not of such nature or severity that they resulted in total occupational or social impairment. As described above, the Veteran was able to continue having a good relationship with his mother and retains some relationship with other family members, even though it may be strained at times. He has never been described as a threat to himself or others. Thus, as the Veteran retains some social and occupational functioning, a 100 percent evaluation is not warranted. See 38 C.F.R. § 4.130, Diagnostic Code 9411.

Accordingly, for the period of appeal from January 9, 2015 to March 27, 2016, the Veteran's PTSD warranted a 70 percent evaluation. The Veteran's symptoms were not of such frequency, severity, and duration that they resulted in occupational and social impairment with deficiencies in most areas to warrant a higher 100 percent evaluation.

TDIU

VA will grant a TDIU when the evidence shows that a veteran is precluded, by reason of his service-connected disabilities, from securing and following "substantially gainful employment" consistent with his education and occupational experience. 38 C.F.R. §§ 3.340, 3.341, 4.16; VAOPGCPREC 75-91; 57 Fed. Reg. 2317 (1992). The central inquiry is "whether the Veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993).

The regulations provide that if there is only one such disability, it must be rated at 60 percent or more; and if there are two or more disabilities, at least one disability must be rated at 40 percent or more, and sufficient additional disability must bring the combined rating to 70 percent or more. Disabilities resulting from common etiology or a single accident or disabilities affecting a single body system will be considered as one disability for the above purposes of one 60 percent disability or one 40 percent disability. 38 C.F.R. § 4.16 (a).

The Board must evaluate whether there are circumstances in the Veteran's case, apart from any non-service connected condition and advancing age, which would justify a total rating based on individual unemployability due solely to the service connected conditions. See Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993); see also Blackburn v. Brown, 5 Vet. App. 375 (1993). Marginal employment shall not be considered substantially gainful employment. Marginal employment generally shall be deemed to exist when a veteran's earned income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Marginal employment may also be held to exist, on a facts found basis (includes but is not limited to employment in a protected environment such as a family business or sheltered workshop), when earned annual income exceeds the poverty threshold. 38 C.F.R. § 4.16 (a).

The Board notes that the Veteran's combined disability rating is now 100 percent, effective March 28, 2016. TDIU is provided where the combined schedular rating for service-connected diseases and disabilities is less than total, or 100 percent. 38 C.F.R. § 4.16(a). TDIU is considered a lesser benefit than the 100 percent rating, and the grant of a 100 percent rating generally renders moot the issue of entitlement to TDIU for the period when the 100 percent rating is in effect. Regardless, the receipt of a 100 percent schedular disability rating for a service-connected disability or disabilities does not necessarily moot the issue of entitlement to TDIU. See Bradley v. Peake, 22 Vet. App. 280 (2008) (holding that a TDIU rating may still form the basis for assignment of special monthly compensation under 38 U.S.C. § 1114 (s)). In this case, the Veteran has specifically raised the issue of unemployability as a result of his disability on appeal. See Rice, 22 Vet. App. at 447. Moreover, in Bradley, supra, the Court held that for the purposes of 38 U.S.C. § 1114(s), a combined 100 percent rating does not satisfy the requirement of "a service-connected disability rated as total," whereas a 100 percent rating assigned pursuant to a TDIU would satisfy that requirement. Bradley, 22 Vet. App. at 290-93.

The Board also notes that in the December 2014 rating decision TDIU was granted effective January 13, 2014. Subsequently, the Veteran was rated as 100% disabled effective March 28, 2016. Thus, the matter of entitlement toTDIU for the period of June 21, 2010 to January 12, 2014 remains on appeal.

For the period of June 21, 2010 to December 10, 2013, the Veteran's only service-connected disability was PTSD rated at 50%. Therefore, he does not meet the schedular rating criteria for TDIU for that period. 

The Board further finds that this matter was referred for extraschedular consideration of TDIU which was denied. The record reflects that the Veteran worked as a truck driver and warehouse worker from July 2005 until approximately April 2010. He reported that he has not worked since that time. He reports that he was terminated from his last job because of prescription medication that he was taking. The Veteran's last employer confirmed the Veteran's employment ended at the end of March in 2010. The employer reported that he was let go due to his inability to pass a drug screen. The Veteran's medical records also indicate that he suffered a non service-connected traumatic brain injury (TBI) in 2010. However, he Board may not consider any disabilities other than the Veteran's service-connected disabilities during this period. Rice. 22 Vet. App. at 455. This evidence shows that, while the Veteran's service connected PTSD did have some adverse effect on his physical and mental abilities during this period, the PTSD in and of itself does not render him unemployable at that time. Furthermore, at his July 2010 VA examination, the Veteran reported that he had been working for the past 4.5 year as a warehouse worker, that his relationship with his supervisor was good and his relationship with his co-workers was good. Finally, he reported that while performing this job he has not lost any time from work. The examiner indicated that the symptoms impaired some task completion and social interaction and the full extent was not known. Additionally, the Board notes that in his application for Social Security Administration benefits he reported that his PTSD, migraine headaches, back injury all contributed to his inability to work. The mental residual functional capacity questionnaire completed by a VA physician noted that the mental statues examination finding reflected he was usually anxious but otherwise presented with normal mental status examination. The physician declined to further provide opinion as to work abilities as they had no knowledge of his work place conditions. Another mental residual functional capacity assessment noted moderate limitations in ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public. The assessment found the Veteran was not significantly limited the other listed categories outlining understanding and memory, concertation and persistence, social interaction or adaptation. The physician concluded the Veteran could perform simple and some complex tasks, can relate to others on a superficial work basis and adapt to work situations. 

Therefore the Board concludes that for the period of June 21, 2010 to December 10, 2013, the evidence does not reflect that the Veteran was unable to secure or follow a substantially gainful occupation as a result of service-connected disability.

For the period of December 11, 2013 to January 11, 2014, the Veteran was service-connected for PTSD rated at 50%, spina bifida occulta L5-S1 with IV Disc Syndrome rated at 40%, and right lower extremity radiculopathy rated at 10% for a combined disability rating of 70%. Thus, the only remaining question is whether the Veteran's service-connected disabilities render him unable to secure or follow substantially gainful employment.

The Veteran underwent a VA examination in November 2014 related to his back and radiculopathy disabilities. The VA examiner opined that his disabilities limited the Veteran's ability to perform jobs that require prolonged sitting, standing, bending and lifting which would impact his ability to be a driver or work in unskilled manual labor. In addition, in a March 2016 opinion, a VA examiner opined that the Veteran's service-connected PTSD limited his obtain and maintain gainful employment. Thus, given the Veteran's high school education and past work history doing manual labor and driving, the Board concludes that the service connected back, radiculopathy, and PTSD rendered the Veteran unable to secure and follow substantially gainful employment. See Beaty v. Brown, 6 Vet. App. 532, 538 (1994) (noting that the Board's determination that the Veteran could perform sedentary work had no plausible basis in the record when the Veteran had an eighth grade education, had been a farmer for 30-40 years and repeated unsuccessful efforts to obtain non-farming employment).

Accordingly, the Board finds that, for the period of December 11, 2013 to January 11, 2014, the Veteran's service-connected disabilities are shown to prevent him from engaging in any substantially gainful employment. Thus, entitlement to a TDIU by reason of service-connected disabilities is warranted during this period.












ORDER

Entitlement to a disability rating for service-connected post-traumatic stress disorder (PTSD) with major depressive disorder in excess of 50% from June 21, 2010 until January 8, 2015 is denied.

Entitlement to a disability rating for service-connected post-traumatic stress disorder (PTSD) with major depressive disorder in excess of 70% from January 9, 2015 to March 27, 2016 is denied.

Entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities for the period of appeal from March 30, 2010 to December 10, 2013 is denied.

Entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities for the period of appeal from December 11, 2013 to January 12, 2014 is granted.



____________________________________________
H. SEESEL
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs